**In re CARMANIA CORP. N.V., Debtor.**

**ABN AMRO BANK N.V., NEW YORK BRANCH, Appellant,**

v.

**CARMANIA CORP. N.V., Appellee.**

**No. 92 Civ. 4192 (MBM).**

United States District Court,
S.D. New York.

March 19, 1993.

Jonathan D. Kantor, Eric P. Wainer, Shea & Gould, New York City, for appellant.

Martin N. Flics, Alan L. Bushlow, Latham & Watkins, New York City, for appellee.

## OPINION AND ORDER

MUKASEY, District Judge.

ABN AMRO Bank ("the Bank") appeals from a decision of the United States Bankruptcy Court for the Southern District of New York, Cornelius Blackshear, B.J. Bankruptcy Judge Blackshear held that postpetition rents assigned to the Bank as additional security for a mortgage held by the Bank did not constitute cash collateral within the meaning of 11 U.S.C. § 363(a), and consequently he denied the Bank's motion for sequestration of cash collateral pursuant to 11 U.S.C. § 363(e). Carmania ("the Debtor") argues further that even if the rents are properly defined as cash collateral, the court should exercise its equitable discretion pursuant to 11 U.S.C. § 552(b) and deny the motion for sequestration. For the reasons stated below, and based on a decision by the Second Circuit after the bankruptcy court ruling, the decision of the bankruptcy court is reversed. The rents are cash collateral and should be sequestered unless the bankruptcy court finds equitable reasons to do otherwise.

### I.

Carmania Corp. N.V. owns and operates an office building at 15 West 47th Street in Manhattan, in New York's diamond district, and the Debtor rents office space to tenants in the diamond and jewelry business. The Debtor also operates a "jewelry exchange" containing retail booths at that address.

ABN Amro Bank N.V. holds a first mortgage on the property executed in 1988 for $40 million. That mortgage modified and consolidated previous loans to appellee by the Bank. (Shafferman Aff. ¶ 21 & Strumphler Aff. ¶ 17) The mortgage also assigns the rents from the property as additional security. It provides in relevant part "[t]hat the Mortgagor hereby assigns to the Mortgagee, as further security for the payment of the indebtedness secured hereby, the rents, issues and profits of the

Premises." (Exh. G to Strumphler Aff. ¶ 16) The mortgage further gives the Bank the right "to enter upon and take possession of the Premises for the purpose of collecting the said rents, issues and profits" upon default of the mortgage, after notice to the Debtor. *Id.*

In August 1990 the parties commenced discussions about restructuring the debt. In December 1990 the Bank agreed to extend the maturity date of the loan principal from December 23, 1990 until January 28, 1991 because the Debtor said it was unable to pay. The Bank did not extend the due date for the interest. Ultimately, no agreement was reached on restructuring the loan. (Shafferman Aff. ¶¶ 39–42 & Strumphler Aff. ¶¶ 21–22)

The Bank then commenced foreclosure proceedings in the Supreme Court of the State of New York on April 29, 1991. In connection with that action, the Bank requested the appointment of a receiver so that the Bank could enforce its lien on the rents. (Strumphler Aff. ¶ 22 & Shafferman Aff. ¶ 4) No receiver had been appointed and foreclosure had not been completed before the Debtor filed a voluntary petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York on May 3, 1991.

The Bank claims that the Debtor owes at least $36,259,381.48. (Strumphler Aff. ¶ 7) The Debtor continues to operate the premises as a debtor-in-possession pursuant to Sections 1107 and 1108 of Chapter 11 of Title 11 of the United States Code ("the Bankruptcy Code"). The Bank is Carmania's principal creditor, and there is no creditors' committee or trustee.

On April 14, 1992 the Bank filed a motion pursuant to Sections 363(c), 363(e), and 361 of the Bankruptcy Code seeking a determination that rents from the property are cash collateral and for sequestration of those rents. The Bank also sought payment of all cash collateral over the amount necessary to maintain the property and an accounting for all use of cash collateral prior to the motion date. Bankruptcy Judge Blackshear held a hearing on the motion on April 28, 1992 and denied the motion in its entirety. He issued a memorandum of his decision June 30, 1992. The Bank appeals from that decision.

## II.

The bankruptcy court's factual determinations are binding unless clearly erroneous, but its conclusions of law are to be reviewed *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988–89 (2d Cir. 1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991); *In re Financial News Network, Inc.*, 126 B.R. 152, 154 (S.D.N.Y.1991).

The issue is whether the Bank had a sufficient security interest in the rents for them to qualify as cash collateral. If the rents are cash collateral, the Bank has a right to have them sequestered by the bankruptcy court, and the Debtor will have only such use of the rents as is deemed by the bankruptcy court to be consistent with preserving the Bank's interest therein. The Bank's security interest is disputed because, as discussed below, under applicable state law it did not have an enforceable right to the rents at the time of Carmania's bankruptcy filing.

Whether the rents at issue are properly classified as cash collateral under Section 363 of the Bankruptcy Code "requires a careful examination of the relevant portions of the Bankruptcy Code and relevant non-bankruptcy law." *In re Vienna Park Properties*, 976 F.2d 106, 111 (2d Cir.1992) ("*Vienna Park* (Cir.)"). Cash collateral is defined in that section as:

cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a). Section 552(b) provides that:

if the debtor and a secured party entered into a security agreement before the

commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... then such security interest extends to such ... rents .. acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

The consequence of cash collateral status is that

at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

█ The Debtor contends, and the bankruptcy court held, that the Bank does not have a security interest in the rents within the meaning of Section 363 as conditioned by Section 552(b). A security interest in rents is defined by reference to the law of the state in which the real property is located. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In other words, "the primary reason why any holder of a mortgage may fail to collect rent immediately after default must stem from state law." *Id.* at 57, 99 S.Ct. at 919. Therefore, New York law determines whether appellant had a security interest in the rents such that they constituted cash collateral under Section 363(a), and "the federal bankruptcy court should take whatever steps are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had en-

sued." *Id.* at 56, 99 S.Ct. at 918. Neither a debtor nor a creditor should get a windfall because of bankruptcy. *In re Vienna Park Properties*, 136 B.R. 43, 55 (S.D.N.Y. 1992) ("*Vienna Park* (Dist.)") (citing *Butner*, 440 U.S. at 55, 99 S.Ct. at 918), *aff'd*, *In re Vienna Park Properties*, 976 F.2d 106 (2d Cir.1992).

The Second Circuit recently considered the issue of the cash collateral status of rents assigned as additional security for a mortgage in *Vienna Park* (Cir.). There also the banks had not completed foreclosure before the Debtor filed for Chapter 11 protection. The only relevant difference between the *Vienna Park* case and the case at bar is that the security interest in *Vienna Park* was defined by reference to Virginia law, whereas the security interest in the case at bar is defined by New York law.

█ The Debtor contends that New York law defining the perfection and enforceability of a security interest dictates a different outcome in this case. Bankruptcy jurisprudence is filled with confusing and inconsistent treatments of the distinction between "perfection" and "enforcement."[1] This court adopts the position of Judge Sand in *Vienna Park* (Dist.) that " 'perfection' refers to the process by which a secured party puts third-parties on notice of its interest, whereas 'enforcement' refers to the steps the secured party must take to realize its rights in the collateral." *Id.* at 51. That definitional distinction does not turn on state law. Rather, what turns on state law is the manner in which parties must perfect and then enforce their rights. *See, e.g., Id.* (looking "to Virginia law to determine the requirements for perfection and enforcement of ... a security interest" in rents).

█ Although a perfected interest in the security is necessary for the granting of cash collateral status, perfection is merely a threshold issue.[2] "[U]nder New York

---

1. *See, e.g.,* Bonnie Kay Donahue & W. David Edwards, "The Treatment of Assignments of Rents in Bankruptcy: Emerging Issues Relating to Perfection, Cash Collateral, and Plan Confirmation," 48 Bus.Law. 633 (1993).

2. *See, e.g., In re Rancourt*, 123 B.R. 143, 146 (Bankr.D.N.H.1991) (on the irrelevance of perfection: "In essence, the Court has been swimming around in a 'school of red herring' supplied by all the interesting but irrelevant extra-

law, rents are considered interests in real property and as such a security interest in rents is perfected upon recordation." *In re Financial Center Associates*, 140 B.R. 829, 830 (Bankr.E.D.N.Y.1992) (citing N.Y.R.P.L. §§ 291, 294–a (McKinney 1989 & 1991 Supp.) and 74 N.Y.Jur.2d, Landlord and Tenant, §§ 334, 335 (1988 & 1991 Supp.)). The mortgage in the case at bar contained the assignment of rents and was recorded. (Tr. at 14) Thus, the interest in the rents has been perfected.

■ The enforceability of the rent assignment is relevant but not dispositive under the Second Circuit's analysis in *Vienna Park* (Cir.). Whether an assignment of rents is absolute or conditional affects its enforceability. The assignment of rents clause at issue here constituted a pledge of rents as security in case of default on the mortgage and not an absolute assignment, because the rents are assigned as "further security," and the Bank's right to collect them is triggered only "upon the occurrence of a default." (Exh. G to Strumphler Aff. ¶ 16) Under New York law, such a clause creates a security interest "to which the pledgee does not become entitled until he asserts his rights." *In re Brose*, 254 F. 664, 668 (2d Cir.1918); *In re Flower City Nursing Home, Inc.*, 38 B.R. 642, 645 (Bankr.W.D.N.Y.1984). In New York, a conditional assignment of rents becomes enforceable through entry into possession or by the appointment of a receiver to collect rents. *In re Northport Marina Associates*, 136 B.R. 911, 916–917 (Bankr. E.D.N.Y.1992); *Ganbaum v. Rockwood Realty Corp.*, 62 Misc.2d 391, 308 N.Y.S.2d 436, 437 (1970); *New York Life Ins. Co. v. Fulton Dev. Corp.*, 265 N.Y. 348, 352, 193 N.E. 169, 171 (1934); *Sullivan v. Rosson*, 223 N.Y. 217, 225, 119 N.E. 405, 408 (1918).

■ In the case at hand, enforceability under state law was cut off by the bankruptcy filing.[3] That is, the Bank had begun foreclosure proceedings and had requested the appointment of a receiver to collect the rents when the Debtor filed under Chapter 11, automatically staying foreclosure and appointment of the receiver. 11 U.S.C. § 362. The Bank therefore did not have an enforceable right to the rents under New York law at the time of the Chapter 11 filing.

■ However, the Second Circuit has held that the current enforceability of the Bank's security interest in the rents does not determine cash collateral status under Section 363. "The failure of a secured party to perform enforcement procedures prior to bankruptcy merely renders an interest inchoate, not nullified.... An agreement that creates an inchoate lien on rents creates a 'security interest' under the Bankruptcy Code." *Vienna Park* (Cir.), 976 F.2d at 112–113. *See also Northport Marina*, 136 B.R. at 919. The effect of that holding is that the rents may be sequestered as cash collateral even though the Bank does not yet have an enforceable right to collect them. *See Vienna Park* (Cir.), 976 F.2d at 114. Therefore, the question becomes whether an inchoate lien was created under New York law, as it was under Virginia law in the *Vienna Park* case.

New York case law establishes that although

> under New York law, a mortgagee is not entitled to collect rent pursuant to an assignment of rent merely upon the occurrence of a default[,] [i]n the event of default, the mortgagee has an equitable claim to unpaid rents, but this equitable lien does not come into force and effect until the appointment of a receiver or the entry into possession by the mortgagee.

*Northport Marina*, 136 B.R. at 916–917 (citing *Fulton Dev. Corp.*, 265 N.Y. [at 352], 193 N.E. at 170; *Sullivan*, 223 N.Y. [at 225], 119 N.E. [at 408]; *In re Sterling Bank & Trust Co.*, 21 N.Y.S.2d 566, 569 (1940)).

In *Northport Marina* a Bank with a similar conditional assignment of rents

---

neous legal and metaphysical questions presented by the parties").

3. Such was apparently the Debtor's intention in filing its Chapter 11 petition immediately after the Bank began foreclosure proceedings. (*See* Debtor's Rule 52 Aff. ¶ 5)

from mortgaged property had begun foreclosure proceedings but no receiver had been appointed when the mortgagor-debtor filed for relief under Chapter 11. There the security interest in the rents also was governed by New York law. The bankruptcy court held that

> [v]iewing rents as cash collateral in which a secured creditor has an interest even though the debtor's title is superior is more compatible with the overall structure of the Code than the result reached in *[In re] Kearney [Hotel Partners*, 92 B.R. 95, (Bankr.S.D.N.Y.1988) (holding security interest in rents not perfected prepetition under Nebraska law) ], which would deny a secured creditor any protection of its interest.

*Northport Marina*, 136 B.R. at 920.

 Even though a creditor may not have an enforceable interest in rents at the time of a bankruptcy filing, the timing of the bankruptcy filing should not cut off the creditor's right to the rents when the creditor already had moved to foreclose and had requested the appointment of a receiver. *Butner* stands for the proposition that the Bank's rights in this respect should not diminish or vanish due to the happenstance of bankruptcy. New York law rewards parties who are diligent in protecting their interests by requiring affirmative action by the secured party before an assignment of rents is enforceable. *See, e.g., Vecchiarelli v. Garsal Realty, Inc.*, 111 Misc.2d 157, 443 N.Y.S.2d 622, 623 (1980). Here, the Bank was diligent in pursuing its interest in that it commenced foreclosure and requested the appointment of a receiver. But for the bankruptcy filing, the Bank would have rendered its interest enforceable. Therefore, protection of the rents as cash collateral is consistent with New York law and with the purposes of the Bankrupt-

cy Code, as articulated by the Second Circuit in *Vienna Park*.[4]

Accordingly, the rents were properly classified as cash collateral from date of commencement of bankruptcy case, *see Vienna Park* (Cir.), 976 F.2d at 114, even though the right to them was unenforceable at time of the bankruptcy filing and there is no present right to collect them.

### III.

Of course, state law and policy may conflict inevitably with the bankruptcy laws' goal of allowing a debtor breathing space in which to reorganize. That presents a "dilemma", and

> [i]t may be that bankruptcy courts simply cannot implement chapter 11 reorganizations, involving real property assets, in terms of the underlying rationale of the present Code favoring consensual reorganizations, if an oversecured mortgagee's cash collateral rights in the first weeks of the proceeding are allowed to freeze the debtor's cash flow and business operation unless the debtor agrees to the control and direction of the mortgagee.

*In re Rancourt*, 123 B.R. 143, 150 (Bankr. D.N.H.1991). Section 552(b) states that a security interest extends to rents, subject to applicable nonbankruptcy law, as discussed above, and "except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise." That clause may provide a way of resolving the dilemma. *Id.* at 151. That decision is for the bankruptcy court. The only equitable reason proffered to the bankruptcy court to "order otherwise"—the Bank's alleged delay—is insufficient as set forth below.

The Debtor claims also that the Bank's failure to assert an interest in the rents

---

**4.** Although at present the Bank has no enforceable right actually to collect the rents, the holding of *Butner* that a bankruptcy court should protect rights under state law, has been interpreted to mean "that the assignee may ask the bankruptcy court to authorize those actions necessary to enforce the assignment and thereby complete the assignee's entitlement to the rents." *Vienna Park* (Dist.), 136 B.R. at 53

(quoting *In re Raleigh/Spring Forest Apartments Assoc.*, 118 B.R. 42, 46 (Bankr.E.D.N.C.1990)). Therefore, bankruptcy may delay the enforcement of a state law interest, but a bankruptcy judge should be able to remedy that postponement. An intervening bankruptcy should simply have the effect of halting foreclosure temporarily. *Butner*, 440 U.S. at 56–57, 99 S.Ct. at 918–19.

until one year into the bankruptcy proceeding warrants application of Section 552(b) against the Bank. However, the record below shows that the Bank did not pursue the issue sooner because it knew that the Bankruptcy Judge disagreed at that time with the Bank's legal position. The Bank raised the issue promptly when Judge Blackshear's opinion in *Vienna Park* was reversed by the District Court, and when *Northport Marina* had been decided, which raised the Bank's hope for a more sympathetic hearing. The Bankruptcy Judge explicitly recognized that course of events in considering the Debtor's arguments below about the applicability of Section 552(b). (Tr. at 37, 46) The timing of the Bank's motion under Section 363 does not appear to warrant application of Section 552(b)'s equitable provisions in this case.

\* \* \*

For the reasons stated above, the decision of the bankruptcy court is reversed. The rents are cash collateral and the Bank is entitled to have them sequestered pursuant to 11 U.S.C. § 363(e), absent a sufficient showing under Section 552(b).

SO ORDERED.