The PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant,

v.

BOSTON HARBOR MARINA COMPANY, Appellee.

Civ. A. No. 93–40075–GN.

United States District Court, D. Massachusetts.

Nov. 5, 1993.

Amending Order Certifying Decision for Appeal Nov. 30, 1993.

Howard J. Levitan, Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for Boston Harbor Marina Co.

Joseph H. Baldiga, Jon D. Schneider, Andrew L. Cohen, Goodwin, Proctor & Hoar, Boston, MA, for Prudential Insurance Co. of America.

### MEMORANDUM AND ORDER

GORTON, District Judge.

This is an appeal from an Order of the United States Bankruptcy Court for the District of Massachusetts, Western Division, James F. Queenan, Jr., B.J., pursuant to 28 U.S.C. § 158(a) and 28 U.S.C. § 1334. On April 7, 1993, the Bankruptcy Court decided that the rents assigned to The Prudential Insurance Company of America ("Prudential"), as additional security for a mortgage executed by Boston Harbor Marina Company ("Debtor") did not constitute cash collateral within the meaning of Section 363(a) of the U.S.Bankruptcy Code ("the Code"), 11 U.S.C. §§ 101 *et seq.* Consequently, the Court denied Prudential's Motion to Segregate Rents and to Limit Debtor's Use of Rent ("the Motion to Segregate").

Prudential filed an appeal from that decision on May 20, 1993. Oral argument was heard by this Court on October 26, 1993. For the reasons stated below, the decision of the Bankruptcy Court is reversed, and the case is remanded with instructions to segregate the rents as cash collateral, unless the Bankruptcy Court finds that equitable considerations require it to do otherwise.

## I. *Factual and Procedural Background*

The Debtor is a joint venture formed in 1982 to acquire and develop land in Quincy, Massachusetts, adjacent to Boston Harbor into a multi-use development known as "Marina Bay". One portion of the development consists of a 153,000 square-foot, revenue-generating office building ("the Property").[1] On January 29, 1988 the Debtor executed and delivered to Prudential a promissory note ("the Note") in the original principal amount of $15.3 million. As security for the Note, the parties executed a non-recourse Mortgage and Security Agreement ("the Mortgage") which encumbered the property and a Collateral Assignment of Leases and Rents ("the Collateral Assignment"), with respect to the leases, rents, income and profits arising from the property.[2]

The development was initially successful, but like many others, was adversely affected by the decline in real-estate values which beset the region in the late 1980's. Accordingly, on July 1, 1992, ("the filing date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Code. Prior to June 1, 1992, one month before the filing date, the Debtor's Note was current. The payment made on that date, however, was the last payment. Moreover, on the filing date, real estate taxes due to the City of Quincy for the entire fiscal year ending June 30, 1992, remained unpaid. Although both parties concede that Debtor was in default, pursuant to Article Two, § 2.01 of the Mortgage, Prudential did not accelerate the Note nor take any action to enforce its rights under the Mortgage Documents prior to the filing date.

Debtor remained in possession of the Property after the filing date and continued to operate the business as a debtor-in-possession. Once the petition was filed, Prudential was restrained from taking any action to enforce its rights to the rents because of the Code's imposition of an automatic stay. On December 16, 1992, more than five months after the filing date, Prudential filed a motion in the Bankruptcy Court for relief from stay, seeking to foreclose on its mortgage and take possession of the building. On December 30, 1992, the Bankruptcy Court authorized Prudential to take possession of the Property, which it did on January 25, 1993. Prudential has collected rents derived from the Property from that date forward. From the filing date (July 1, 1992) through the date Prudential took possession (January 25, 1993), the Debtor continued to collect rents from the property, and paid all operating expenses with the exception, however, of accruing real-estate taxes.

On January 6, 1993, Prudential filed the Motion to Segregate seeking segregation of the rents for the benefit of Prudential. Prudential argued that properly recorded, and therefore perfected Mortgage Documents, give it a cash collateral security interest in the rents under Sections 363 and 552 of the Code. The Debtor opposed this motion, asserting that Prudential had not enforced its interest in the rents in accordance with Massachusetts law by taking possession of the property pre-petition and therefore held no interest in the rents. On April 7, 1993, the Motion to Segregate was denied by the Bankruptcy Court without written findings of fact or conclusions of law. This appeal, filed on May 20, 1993, is from that denial.

Debtor filed its First Amended and Restated Plan of Reorganization ("the Plan") on April 5, 1993. Prudential has filed an

---

**1.** No verified evidence has been introduced regarding the net rents generated by the Property. Moreover, rents from this property have been deposited, along with rents from other properties controlled by the Debtor, into a single, consolidated debtor-in-possession account.

**2.** The Note, the Mortgage and the Collateral Assignment will hereinafter be referred to collectively as the "Mortgage Documents".

objection to the confirmation of the Plan because it does not call for payment of past-due real estate taxes by the Debtor, and because it proposes to distribute monies that Prudential considers to be its cash collateral. A hearing on confirmation of the plan is scheduled in the Bankruptcy Court on November 9, 1993.

## II. *Legal Reasoning*

■ The factual determinations of the Bankruptcy Court are binding unless clearly erroneous, but its conclusions of law are to be reviewed *de novo*. *In re LaRoche*, 969 F.2d 1299, 1301 (1st Cir.1992); *Robb v. Schindler*, 142 B.R. 589, 590 (D.Mass. 1992).

■ After hearing extensive oral argument on this issue, and after carefully reviewing the memoranda of both parties as well as the relevant case law both in this circuit and others, this Court holds that a perfected security interest in rents, even if unenforced prior to the date of the bankruptcy petition, constitutes cash collateral. As the United States Court of Appeals for the Second Circuit recently explained, "the failure of a secured party to perform enforcement procedures prior to bankruptcy merely renders an interest inchoate, not nullified." *In re Vienna Park Properties*, 976 F.2d 106, 112 (2d Cir.1992). To the extent that previous bankruptcy decisions in this district, notably, *In re Prichard Plaza Assoc. Ltd. Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988), have concluded otherwise, this Court respectfully finds them unpersuasive.

## A. *Issue Presented*

The central issue in this analysis, is whether Prudential had sufficient security interest in the rents for them to qualify as cash collateral. If the rents are cash collateral, then Prudential has a right to have them segregated by the Bankruptcy Court.

Consequently, the Debtor will have only such use of them as is deemed by that Court to be consistent with preserving Prudential's security interest therein and consistent with equitable considerations. The security interest, if any, that Prudential holds in the rents is disputed because Prudential did not enforce its right to collect the rents under Massachusetts law before Debtor filed for bankruptcy.

The ultimate question is, therefore, whether a mortgagee who holds a recorded, pre-petition mortgage against the debtor's real property as well as a recorded, pre-petition assignment of rents pertaining to that property, has sufficient interest in the rents to trigger the "cash collateral" provisions of the Code, where the mortgagee has not taken possession of the real property prior to the bankruptcy filing. For the following reasons, this Court believes that the mortgagee has such an interest.

### B. *Cash Collateral under the Bankruptcy Code*

"Cash collateral", as defined in § 363(a) of the Code, includes cash:

in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.[3]

The significance of a determination that assets constitute cash collateral is that the debtor's use of such assets is restricted. Pursuant to Section 363(c)(2):

The trustee may not use, sell or lease cash collateral ... unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorized such use, sale or lease in accordance with the provisions of this section.

Section 363(e) further provides that:

at any time, on request of an entity that has an interest in property used, sold or

---

**3.** In Section 203 of Senate Bill No. 1985 (part of the Omnibus Bankruptcy Reform Act not yet enacted, S. 1985 102d Cong., 2d Sess. (1992)), Congress sought to amend Section 363(a) of the Code. According to academic commentary, "[t]he intent of the proposed amendment appears to be that all assignments of rent properly recorded pre-petition would be deemed to be perfected as of the filing of the petition and the rents thereby treated as cash collateral." Donahue & Edwards, *The Treatment of Assignments of Rents in Bankruptcy: Emerging Issues Relating to Perfection, Cash Collateral, and Plan Confirmation*, 48 Bus.Law 633, 652–53 (1993) (hereinafter "Donahue").

leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

Section 552(a) of the Code establishes the general rule that property acquired after the commencement of bankruptcy is not subject to any security interest arising from an agreement entered into before the commencement of the bankruptcy case. It specifically states that:

> property acquired ... by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

However, § 552(b) provides an exception applicable to the question before this Court. That subsection provides that:

> if the debtor and an entity entered into a security agreement before the commencement of the case and if the security agreement extends to property of the debtor acquired before the commencement of the case and to ... rents ... of such property, then such security interest extends to such ... rents ... acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

Section 101(51) of the Code defines "security interest" as a "lien created by an agreement," and Section 101(50) of the Code defines a "security agreement" as an "agreement that creates or provides for security interest." A "lien", in turn, is broadly defined in Section 101(37) of the Code as a "charge against or interest in property to secure payment of a debt or performance of an obligation." Thus, under § 552(b), a pre-petition lien on rents continues in bankruptcy to the extent such interest in rents is expressly provided for by the security agreement and by "applicable nonbankruptcy law".

## C. *Massachusetts Law Applied*

■ By operation of § 552(b), the starting point for the analysis of whether Prudential has a security interest in the rents is Massachusetts law as the "applicable nonbankruptcy law". It is well settled that state law controls the determination of the extent and existence of a security interest in property, such as rents. *See Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979).[4] In order to assess the validity of Prudential's security interest in the rents, this Court must apply the relevant provisions of Massachusetts law. There is no question in this case, that Prudential had a perfected interest in the rents under Massachusetts law.

■ The Mortgage and Collateral Assignment were executed and properly recorded in the Norfolk County Registry of Deeds well before Debtor filed the bankruptcy petition. Pursuant to Massachusetts law, the recording of a mortgage assigning existing or future rents creates a conveyance good against third parties. M.G.L. c. 183, § 4. Both documents expressly grant Prudential a security interest in the rents, and the interest was perfected at the time the documents were recorded.

The Mortgage itself provides that the Debtor grants to Prudential:

> (c) All rents, incomes, profits ... under any an all leases or tenancies now existing or hereafter created of the Premises or any part thereof with the right to receive and apply same to such indebtedness after an event of Default hereunder, and Mortgagee may demand, sue for and recover such payments but shall not be required to so.

Mortgage, at p. 3. The Collateral Assignment, executed contemporaneously with the Mortgage, grants Prudential an interest in the rents, stating that upon an Event of Default, Prudential may:

---

**4.** Although *Butner* was decided under the former Bankruptcy Act, its holding has been extended to determine a mortgagee's interest in rents under the current Bankruptcy Code. *See Barnhill v. Johnson,* —— U.S. ——, ——, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992).

at its *option*, without *notice* and without regard to the adequacy of the security for the said principal sum, interest and indebtedness, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court, take possession of the Premises and have, hold, manage lease and operate the same on such terms and for such period of time as the Assignor remains in default and either with or without taking possession of the Premises, in its own name, sue for or otherwise collect and receive all rents....

Collateral Assignment, at p. 3.

Therefore, at the filing date, Prudential had a "perfected" security interest in the rents derived from the Property. For purposes of §§ 363(a) and 552(b) of the Code, the rents were subject to a security interest "to the extent provided by [a] security agreement [entered into before the commencement of the case] and by applicable nonbankruptcy law". Accordingly, the rents, even though Prudential's interest therein had not yet been enforced as of the date of the bankruptcy petition, are cash collateral under § 363(a) of the Code, entitled to protection under § 363(c)(2) of the Code.

### D. *Scope of the Application of Massachusetts Law*

While this Court recognizes that Massachusetts law applies in determining the extent of the security interest, at that point we diverge from the reasoning of several bankruptcy opinions, including *Prichard*, which hold that a security interest not yet enforced, or "inchoate", at the time of a bankruptcy filing is not enforceable.

In *Prichard,* the Bankruptcy Court held that Massachusetts law requires a mortgagee to take peaceable and exclusive pos-

session of the property in order to be entitled to collect rents, even if there is a specific assignment of rents in the mortgage documents. *Prichard,* 84 B.R. at 297.[5] While this Court does not quarrel with that interpretation of Massachusetts law concerning enforcement of a right to collect rents, we believe it is unrelated to the determination of what constitutes cash collateral under the Bankruptcy Code. The distinction between "enforcement" and "perfection" needs to be clarified.

Bankruptcy Courts have rendered confusing and inconsistent opinions with respect to the distinction between "perfection" and "enforcement" of security interests. *See, e.g., In re Carmania Corp. N.V.,* 154 B.R. 160, 163 (S.D.N.Y.1993); *In re Vienna Park Properties,* 136 B.R. 43, 50–51 (S.D.N.Y.1992), *aff'd,* 976 F.2d 106 (2nd Cir.1992); *In re Rancourt,* 123 B.R. 143, 147–48 (Bankr.D.N.H.1991); *In re Park at Dash Point L.P.,* 121 B.R. 850 (Bankr.W.D.Wa.1990), *aff'd,* 985 F.2d 1008 (9th Cir.1993); *See also* Donahue, *supra* at 645–54.

This Court agrees with the position taken by the District Court for the Southern District of New York, and affirmed by the Second Circuit, resolving the "definitional issue that appears to have contributed to the confusion in this area of the law: the distinction between 'perfection' and 'enforcement' of a security interest." *Vienna Park,* 136 B.R. at 50–51. In *Vienna Park,* the Court for the Southern District of New York found that:

'perfection' refers to the process by which a secured party puts third-parties on notice of its interest, whereas 'enforcement' refers to the steps the se-

---

**5.** Several later cases interpreting Massachusetts law have relaxed the actual possession requirement for enforcement of a right to collect rents, although they still require some overt act. Collectively, those cases demonstrate that the question of what action is required under Massachusetts law to entitle a mortgagee to collect rents post-petition has not yet been conclusively decided. *See e.g., In re Ashford Apartments Limited Partnership,* 132 B.R. 217, 219 (Bankr. D.Mass.1991) ("a mortgagee who enters the property and gives notice of that fact to tenants prior to the filing of that petition under the Bankruptcy Code has done all that is required to

obtain an interest in rents entitled to protection under Sec. 363."); *In re Milford Common J.V. Trust,* 117 B.R. 15 (Bankr.D.Mass.1990) (Massachusetts law requires an overt act by the assignee to take actual or constructive possession for it to be entitled to the rents); *In re Cantonwood Associates Ltd. Partnership,* 138 B.R. 648, 659 (Bankr.D.Mass.1992) (filing a certificate of entry, giving notice to tenants and commencing suit for possession is sufficient); *In re Concord Mill Ltd.,* 136 B.R. 896, 901 (Bankr.D.Mass.1992) (an attempt to take possession, although frustrated by the borrower, and notice to tenants is adequate).

cured party must take to realize its rights in collateral which in this case is the rental income.

*Id.,* at 51.

While it is true that Massachusetts law governs the procedure required to perfect or to enforce a security interest, it is unnecessary for a determination of cash collateral status to go beyond ascertaining whether, under Massachusetts law, a perfected, security lien exists.[6] Enforcement of a right to receive rent and the perfection of a security interest in rents are separate and distinct legal issues. *See Vienna Park,* 976 F.2d at 112; *In re SeSide Corp. Ltd.,* 152 B.R. 878, 884 (E.D.Pa.1993); *Carmania,* 154 B.R. at 163–64; *Midlantic Nat'l Bank v. Sourlis,* 141 B.R. 826, 832 (D.N.J. 1992); *In re Mount Pleasant Ltd. Partnership,* 144 B.R. 727, 733 (Bankr. W.D.Mich.1992).

The relationship between the timing of enforcement and the entitlement to rents has led courts to describe security interests in rents as "choate" or "inchoate". *See, e.g., Prichard,* 84 B.R. at 298, 301; *See also Dash Point,* 121 B.R. at 855 (describing the development of the "choate" and "inchoate" concept); *Rancourt,* 123 B.R. at 148 (same); *Edwards, supra,* at 645–46. The distinction depends on whether a security interest in rents had been enforced pursuant to one of the enforcement procedures permitted under applicable state law. If the interest has not yet been enforced, meaning the mortgagee is not yet entitled to collect rents, his interest is considered "inchoate", *Dash Point,* 121 B.R. at 855, and in many cases non-existent. *See e.g., Prichard,* 84 B.R. at 197; *In re Ledgemere Land Corp.,* 116 B.R. 338, 341 (Bankr. D.Mass.1990); *Ashford,* 132 B.R. at 219; *In re Wynnewood House Assoc.,* 121 B.R.

716 (Bankr.E.D.Pa.1990) (applying Pennsylvania law).[7]

In the view of this Court, the concept of inchoateness is irrelevant to the determination of cash collateral status under the Bankruptcy Code. As the Second Circuit explained:

An enforceable interest regarding an assignment of rents arises in favor of the assignee upon the creation of the security interest. The right to actual enforcement, however, is subject to the occurrence of statutory and contractual conditions precedent. While the conditions precedent might not have occurred as of filing [for bankruptcy] regarding the ... rents, that does not change the fact that the post-petition rents are subject to the [creditor's] security interest and becomes its cash collateral under 11 U.S.C. § 363.

*Vienna Park,* 976 F.2d at 113, *quoting, In re Pavilion Place Associates,* 89 B.R. 36, 39 (Bankr.D.Minn.1988); *See also, New York Life Insurance Co. v. Bremer Towers,* 714 F.Supp. 414, 418 (D.Minn.1989) ("The fact that a creditor did not enforce that perfected interest prior to bankruptcy does not invalidate the interest, it merely stays the enforcement of that interest pending the bankruptcy court's determination of the party's entitlement to it."); *SeSide,* 152 B.R. at 884 ("This Court does not agree that a creditor must have obtained a present right to receive rents prior to the bankruptcy in order to have an enforceable security interest in rents as cash collateral."); *Rancourt,* 123 B.R. at 148 ("The fact that the mortgagee can't [yet] enforce his security interest in specific rents ... does not destroy the legal existence of an effective security interest in rents.").

The District Court of New Jersey joined the trend by holding that while a mortgagee's right to collect rents may not exist

---

**6.** An analysis of Massachusetts law governing the actual enforcement of a right to collect rents, would be relevant only if a secured creditor had not yet enforced his rights and the bankruptcy court deemed it necessary, in order to provide adequate protection to the mortgagee, to declare the mortgagee entitled to collect the rents. As at least one Bankruptcy Court has held, "the bankruptcy court's powers are sufficiently broad to allow it to enforce a mortgagee's security interest in rents when and to the extent a state court would do so." *Dash Point,*

121 B.R. at 860. That situation is not present here.

**7.** The holding and reasoning in *Wynnewood,* 121 B.R. 716, was expressly rejected by the District Court in *SeSide,* 152 B.R. at 884. *SeSide* and its disapproval of *Wynnewood,* was thereafter cited by the United States Court of Appeals for the Third Circuit in *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, n. 1 (3d Cir.1993).

absent an act of enforcement, the mortgagee's interest in the rents exists and should be protected. The Court noted that there was no question that a state court would enforce a mortgagee's perfected, contractual right to the rents and that therefore a different result should not exist in bankruptcy court. *Sourlis*, 141 B.R. at 832.[8] Moreover, the Court observed that a strict requirement of pre-petition enforcement by creditors would encourage a "race to the courthouse", thus discouraging negotiations and workouts between debtors and mortgagees. *Id.; See also*, Donahue, *supra* at 644–45.

For the reasons set forth above and from what it believes to be the clear meaning of the relevant statutes, this Court concludes that Prudential has a "cash collateral" security interest in post-petition rents. It would be inconsistent with the growing trend in other federal jurisdictions to rule that Prudential, which concededly has a perfected interest in the rents, no longer has a valid security interest merely because it did not enforce its right to collect rents prior to the bankruptcy filing. Accordingly, the denial by the Bankruptcy Court of Prudential's Motion to Segregate is hereby REVERSED and REMANDED for further consideration not inconsistent with the holding of this Court.

### D. *Equitable Considerations*

Section 552(b) of the Bankruptcy Code, which extends cash collateral protection to post-petition security interests, nevertheless allows a court to order otherwise "after notice and a hearing and based on the equities of the case." The question therefore arises in this case as to whether an admitted cash collateral interest should be permitted to reach post-petition rents after consideration of the specific equities involved in this case.

In *Butner*, the Supreme Court found that state law should apply to a mortgagee's property rights and held that the bankruptcy courts should "take whatever steps

are necessary to ensure that the mortgagee is afforded in federal bankruptcy court the same protection he would have under state law if no bankruptcy had ensued." 440 U.S. at 56, 99 S.Ct. at 918. This cuts both ways. One court has interpreted this Supreme Court proviso to mean that:

> "[w]hile the mortgagee should not have any lesser property interest because of the bankruptcy filing, it would equally violate the *Butner* standard to give the mortgagee greater rights in the rentals than it would have absent a bankruptcy filing,"

*Rancourt*, 123 B.R. at 150.

The First Circuit, citing the legislative history of the relevant provisions of § 552(b), has concluded that:

> the "equities of the case" proviso is a legislative attempt to address those instances where expenditures of the estate enhance the value of proceeds which, if not adjusted, would lead to an unjust improvement of the secured party's position. In such cases Congress intended for courts to limit the secured party's interest in the proceeds according to the equities of the case so as to avoid prejudicing the unsecured creditors.

*In re Cross Baking Co., Inc.*, 818 F.2d 1027, 1033 (1st Cir.1987), *citing*, S.Rep. No 989, 95th Cong., 2d Sess. 91 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5877; H.R.Rep. No. 595, 95th Cong., 1st Sess. 376–77 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6333. In further support of its interpretation of the "equities of the case" instruction, the First Circuit noted that:

> the flexible approach taken by section 552(b) permits the court to preserve valid security interest in proceeds, rent and the like, but at the same time, allows the court to protect the interests of unsecured creditors.

*Cross Baking*, 818 F.2d at 1033, *quoting*, 4 *Collier on Bankruptcy* § 552.02, at 552–10, –11 (15th ed. 1987) (footnotes omitted). As that Court explained, either the creditor or the debtor can request a hearing regarding whether, based on the equities involved, the creditor's interest in proceeds should be limited. Depending on the

---

**8.** The Supreme Court in *Butner* indicated that the relief in bankruptcy court should not differ from that which would be available in state court. *Butner*, 440 U.S. at 54–57, 99 S.Ct. at 917–19, see *infra*.

court's evaluation of the equities, proceeds may be apportioned between the estate and the secured party as the court deems appropriate. *Id.*

The First Circuit's explanation of Section 552(b) is applicable here regardless of the fact that in *Cross Baking* the Court found it inappropriate to consider the equities of the case because the property involved did not constitute proceeds of the secured creditor's original collateral. The facts in the case at bar are distinguishable because it is uncontested that the rents involved are proceeds of Prudential's real property collateral. Consequently, consideration of the equities may be appropriate here.

■ Without the benefit of a full hearing on the issue, this Court cannot and will not assess the "equities of the case" nor decide what steps must be taken, if any, to afford equitable protection to Prudential's cash collateral interest in post-petition rents. Such an assessment is properly left to the review and discretion of the Bankruptcy Judge. When considering the "equities of the case", however, certain facts deserve attention, including the facts that: 1) Prudential has already foreclosed on the Property, 2) Prudential delayed taking steps to enforce its interest in the rents and 3) tracing the rents is particularly difficult in light of the commingled account. Finally, the Bankruptcy Court may want to determine whether Prudential's interest in the rents can be adequately protected without fully allocating the rents to them, for example, by allocating only that portion necessary to pay past-due real estate taxes.

## ORDER

For the foregoing reasons, this Court finds that Prudential's perfected security interest in rents, although unenforced at the time of the bankruptcy filing, constitutes cash collateral within the meaning of Sections 363 and 552 of the Bankruptcy Code and must be accorded the applicable protection, and, accordingly, orders that:

the decision of the Bankruptcy Court denying Prudential's Motion to Segregate Rents and to Limit Debtor's Use of Rent, is **REVERSED** and **REMANDED** for re-

consideration not inconsistent with this Order.

So Ordered.

## AMENDED ORDER

Nov. 30, 1993.

On November 5, 1993, this Court entered a Memorandum and Order (the "Order") reversing and remanding a decision of the Bankruptcy Court rendered on April 7, 1993. On November 15, 1993, Appellee filed a motion requesting that this Court amend its Order so as to certify the decision for appeal to the United States Court of Appeals for the First Circuit. Appellant opposed that motion.

Because this Court concludes that the Order involves a serious and controlling question of law and that an immediate appeal may materially advance the termination of this litigation, Appellee's motion is **ALLOWED** and the Order is **AMENDED** as follows:

The Court finds that Prudential's perfected security interest in rents, although unenforced at the time of the bankruptcy filing, constitutes cash collateral within the meaning of Sections 363 and 552 of the Bankruptcy Code and must be accorded the applicable protection, and, accordingly, orders that:

the decision of the Bankruptcy Court denying Prudential's Motion to Segregate Rents and to Limit Debtor's Use of Rent, is **REVERSED** and **REMANDED** for reconsideration not inconsistent with this Order.

Pursuant to 28 U.S.C. § 1292(b), this Court believes that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from this Order to the United States Court of Appeals for the First Circuit may materially advance the ultimate termination of the litigation.

So ordered.