**CREDIT LYONNAIS, Plaintiff,**

v.

**GETTY SQUARE ASSOCIATES, and Sol Arker, Defendants.**

**No. 94 Civ. 6472 (HB).**

United States District Court, S.D. New York.

Feb. 2, 1995.

---

David P. Stich, Brown Raysmann & Millstein, New York City, for plaintiff.

Martin B. Epstein, White Plains, NY, for defendants.

BAER, District Judge.

Credit Lyonnais ("CL") commenced this action against Getty Square Associates ("Getty") and Sol Arker (collectively, the "Defendants") to foreclose its first mortgage lien on the premises located at 30 South Broadway, Yonkers, New York (the "Premises"). CL now moves for summary judgment. Defendants cross-move for summary judgment contending that this court lacks subject matter jurisdiction, and, in the alternative, that CL does not have a right to certain rents collected by Getty. Additionally, Arker moves for summary judgment on the ground that he is not personally liable for any rents collected by Getty. For the reasons that follow, CL's motion is GRANTED, Getty's motion is DENIED, and Arker's motion is DENIED.

## I. *Facts*

In August 1989, Getty executed a promissory note (the "Note") wherein Getty promised to pay to CL the principal sum of $4,500,000. To secure the principal and interest thereon, Getty executed a mortgage (the "Mortgage") giving CL a consolidated first mortgage lien on the Premises. The Mortgage gives CL the express right to commence foreclosure proceedings in the event of a default. In August 1989, Getty also executed an assignment of leases (the "Assignment") wherein it assigned the rents and profits of the Premises to CL.

Getty failed to pay interest installments due on July 1, 1994, and thereafter. On August 19, 1994, CL gave Getty written notice of default and demanded that Getty remedy the default by August 29, 1994. Upon Getty's failure to cure, CL notified Getty of its election to receive all money due under the Note and all rents collected since July 1, 1994, the date of default. The court appointed a receiver on September 16, 1994.

CL maintains that Getty is a single asset real estate company, owning only the Premises, and will be unable to satisfy any judgment. CL has therefore named Sol Arker, Getty's general partner, as a defendant.

## II. *Discussion*

CL contends that because Defendants are in default, it is entitled to foreclose and to collect all rents received by the Defendants after the date of default. Defendants concede that they are in default under the Note but maintain that (1) this court lacks subject matter jurisdiction; and (2) CL is entitled only to the rents received after the appointment of the receiver. Further, Arker denies personal liability for any rents collected, and in the alternative, claims that CL must proceed against Getty's assets before moving against his individual assets.

### A. *Standard of Review*

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P.

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 1514, 91 L.Ed.2d 202 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510), *cert. denied*, —— U.S. ——, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." *Id.* at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir.1992).

### B. *Subject Matter Jurisdiction*

CL asserts that federal subject matter jurisdiction exists in this action under 28 U.S.C. § 1332(a)(4), which grants original jurisdiction to district courts over actions exceeding $50,000 and involving a "foreign state," as defined in 28 U.S.C. § 1603(a). Under section 1603(a), a "foreign state" includes a "political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Subsection (b) states that an "agency or instrumentality of a foreign state" is any entity "which is an organ of a foreign state or political subdivision thereof, **or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof**...." 28 U.S.C. § 1603(b)(2) (emphasis added).

CL maintains that it is a "foreign state" under section 1603(a), and therefore subject matter jurisdiction exists under section 1332(a)(4). CL argues that it fits this definition because a majority of its shares are owned by the Republic of France. According to Jean–Marc Moriani, Senior Vice President of the New York Branch of CL, France owns outright 48.5% of CL's outstanding shares. Moriani Aff. ¶ 35. In addition, he

claims that France owns 99.97% of SPBI SNC, another French corporation, which has an 8.67% ownership in CL. *Id.* at ¶ 36. After pooling its ownership interests in CL, Moriani claims that France is a 57.17% shareholder. *Id.*

Neither CL nor this Court has found any direct authority allowing one foreign state to pool its ownership interests in different entities to satisfy the requirements of section 1603(b)(2). CL does cite one case, however, that considered the closely related issue of pooling ownership interests of several foreign states, as opposed to one foreign state's pooling its own interests. *Aluminum Dist. Inc. v. Gulf Aluminum Rolling Mill Co.,* 1989 WL 64174, 1989 U.S. Dist. LEXIS 6739 (N.D.Ill.1989). That court held that an entity whose shares were majority owned by seven Persian Gulf countries—Bahrain, Saudi Arabia, Iraq, Oman Qatar, United Arab Emirates and Kuwait—satisfied the requirements of 1603(b)(2). *Id.* at *2, 1989 U.S.Dist. LEXIS 6739 at *4.

Similarly, courts have allowed pooling by several foreign states in the context of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 *et seq.,* which also defines a "foreign state" under Section 1603. For example, in *LeDonne v. Gulf Air, Inc.,* 700 F.Supp. 1400 (E.D.Va.1988), the court held that an airline owned by Qatar, Oman, Bahrain and the Emirate of Abu Dhabi, satisfied section 1603's "foreign state" requirement notwithstanding the fact that no single foreign state owned more than 50% of the airline. *Id.* at 1405–06; *see also Rios v. Marshall,* 530 F.Supp. 351, 371 (S.D.N.Y.1981) (an unincorporated not-for-profit association of British West Indian governments qualified as an agency of a foreign state under section 1603).

Also, in *Linton v. Airbus Industrie,* 794 F.Supp. 650 (S.D.Tex.1992), although the court ultimately held that defendant corporations were not "foreign states" under section 1603(b), it stated in dicta that "[i]t does not do too much violence to either the plain language or the spirit of FSIA to hold that foreign states may pool their interests in an entity for purposes of determining whether that entity is a foreign state under FSIA." *Id.* at 652.

Getty distinguishes these cases by reminding the court that, here, only one foreign state is attempting to pool its own ownership interests. Although technically correct, this distinction does not compel a different outcome. If several states can pool their ownership interests, then so too should one foreign entity be allowed to pool its own ownership interests for purposes of determining whether that entity is a "foreign state" under section 1603(b)(2). Such a result does not distort the plain meaning of the statute. Accordingly, because France may pool SPBI SNC's shares, a corporation of which France owns 99.97 percent, toward the ownership requirements of section 1603(b), the court has subject matter jurisdiction over this action.

## C. *Claim for Rents*

■ CL requests that the court order Defendants to pay over all rents received after the Defendants' default. Conversely, Getty contends that CL is entitled only to rents collected after the appointment of the receiver. In deciding this issue, the court must determine whether the assignment of rents clause in paragraph 1 of the Assignment is an absolute, unqualified, and self-executing obligation of the Defendants in the event of their default.

■ CL claims that the Assignment entitles it to all rents collected by Getty from the date of default, July 1, 1994, to the date of judgment. Paragraph 1 of the Assignment provides:

> Assignor [Getty] *hereby* assigns, transfers and sets over to the Assignee [CL] the lease or leases ... and any and all leases, subleases, tenancies, subtenancies, rental or occupancy agreements for the use and occupancy of any part or all of the Premises ..., Assignor intending hereby to assign to Assignee all of landlord's interest in said Leases, and all rents, income and profits arising therefrom.

Assignment at ¶ 1 (emphasis added). CL maintains that the use of the present tense indicates the parties' intent to make a present, unconditional assignment. As evidence of this intent, CL cites paragraph 6 of the

Assignment, which grants Getty the right to collect rents so long as it is not in default, and provides that the collected rents "shall be received and collected by Assignor as a trust fund ..." for payment of the amounts due under the mortgage. *Id.* at ¶ 6. The law is clear that where an assignment of rents is a present tense assignment of all rents to be held in trust for the benefit of the mortgage lender, the mortgage lender is entitled to all rents paid to the mortgagor from the date of the mortgagor's default. *Federal Home Loan Mortgage Corp. v. 141st Street and Broadway Realty Co.*, 1994 WL 9686 (S.D.N.Y.1994); *Federal Home Loan Mortgage Corp. v. 4272 White Plains Assocs.*, 1993 WL 319429 (S.D.N.Y.1993); *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F.Supp. 133, 140 (S.D.N.Y.1991).

▌ Getty argues, however, that because the fourth "whereas" clause of the Assignment characterizes the assignment as "additional security," it constitutes merely a pledge of rents as security in the event of default. A pledge of rents as security in the event of default is not a present, absolute assignment. *See generally In re Carmania Corp., N.V.*, 154 B.R. 160 (S.D.N.Y.1993); *In re Northport Marina Assocs.*, 136 B.R. 911 (E.D.N.Y.1992). According to Getty, the mortgagee must take affirmative steps under the Assignment—such as seeking the designation of a court-appointed receiver—before its rights to rents collected are activated. Therefore, Getty contends that CL has no right to rents received prior to September 16, 1994, the date of the appointment of the receiver.

Getty's position is untenable. First, the majority of cases it cites condition the mortgagee's right to collection of rents upon an event of default and do not establish a trust relationship, as the parties have in this Assignment. *In re Carmania Corp. N.V.*, 154 B.R. 160 (S.D.N.Y.1993); *In re Northport Marina Assocs.*, 136 B.R. 911 (E.D.N.Y. 1992). Although a District of Massachusetts case cited by Getty, *In re McCann*, 140 B.R. 926 (D.Mass.1992), does establish a trust relationship, it serves only as persuasive authority and does not control this court's holding.

Second, adopting Getty's position would render the trust clause superfluous, a result the parties surely did not intend. *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir.1992) (interpretation of contract that renders a clause superfluous is not preferred); *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir.1985) (interpretation of contract that gives meaning to all terms is preferred to one that leaves some terms without effect).

Third, the fourth "whereas" clause does not vitiate the present tense assignment of rents clause. Indeed, a whereas clause in a document such as this conveys no rights whatsoever. "[A]n expression of intent in a 'whereas' clause of an agreement between two parties may be useful as an aid in construing the rights and obligations created by the agreement, but it cannot create any right beyond those arising from the operative terms of the document." *Genovese Drug Stores v. Connecticut Packing Co.*, 732 F.2d 286, 291 (2d Cir.1984).

Getty further argues that CL is estopped from recovering rents because it waited until August 19, 1994, to assert its rights. Estoppel requires, among other things, "reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *General Electric Capital Corp. v. Armadora*, 37 F.3d 41, 45 (2d Cir.1994). Getty, however, has offered no evidence of a change in its position to its substantial detriment owing to CL's delay in asserting its rights.

D. *Liability of Sol Arker*

▌ Arker, Getty's general partner, claims that he is not personally liable for rents collected after July 1994 because exculpation clauses found in the Note, Mortgage and Assignment exonerate him from personal liability. Each of these exoneration clauses, however, state that it has "no application to liability for breach of trust ∴." Note at pp. 4–5; Mortgage at ¶ 6.01; Assignment at ¶ 16. Under New York law, misappropriation of partnership funds by any partner is a breach of trust. N.Y. Partnership Law § 25(2) (McKinney 1988). Because this court has held that CL is entitled to the rents collected by Getty from the date of default, and be-

cause Getty never remitted these funds to CL, Getty's partnership funds were misappropriated. Pursuant to section 25(2), this constitutes a breach of trust and prevents Arker from using the exculpation clauses as a shield to his personal liability.

■ Arker also argues that it is premature for CL to move against him because CL has not conclusively demonstrated Getty's insolvency. The parties cite conflicting case law on whether a judgment creditor must look to partnership property first to satisfy the judgment. Getty cites *United States Trust Co. of New York v. Bamco 18*, 183 A.D.2d 549, 585 N.Y.S.2d 186 (1st Dep't 1992), which states that:

> [w]hile it may fairly be said ... that there is a "long-standing rule that a judgment creditor generally must look to partnership property first to satisfy the judgment" ..., it is an overstatement to assert, as defendants do, that it requires a creditor to affirmatively *establish* that partnership assets are insufficient before he is permitted to reach the individual assets of a partner.... Given the broad relief available to an individual partner under the Partnership Law and the joint liability imposed upon him, it would be unreasonable to require a creditor to undertake elaborate efforts ... in the attempt to enforce judgment against partnership assets before proceeding against assets of the individuals comprising the partnership.

*Id.*, 585 N.Y.S.2d at 188–89 (citation omitted).

In contrast to *Bamco 18*, CL cites cases that limit a partner's liability to where the partnership is insolvent, incapable of paying its debts, or where no remedy exists without holding partners personally liable. *Federal Home Loan Mortgage Corp. v. Dutch Lane Assocs.*, 775 F.Supp. 133, 141 (S.D.N.Y.1991); *Vegetable Kingdom, Inc. v. Katzen*, 653 F.Supp. 917, 924 (N.D.N.Y.1987); *Cunard Line Ltd. v. Abney*, 540 F.Supp. 657, 659 (S.D.N.Y.1982); *Wisnouse v. Telsey*, 367 F.Supp. 855, 859 (S.D.N.Y.1973).

Although apparently incongruous, both *Bamco 18* and *Dutch Lane* involve a partner who is jointly liable and, therefore, are not controlling here. *Bamco 18*, 585 N.Y.S.2d at 189; *Dutch Lane*, 775 F.Supp. at 141. Ark-

er, on the other hand, is jointly *and* severally liable for CL's collection of rents after default due to his breach of trust. According to New York law, "all partners are liable ... [j]ointly and severally for everything chargeable to the partnership under sections twenty-four and twenty-five." N.Y. Partnership Law § 26(1) (McKinney 1988). Section twenty-five, which addresses a partner's breach of trust, states, *inter alia*, that the partnership is "bound to make good the loss ... [w]here the partnership in the course of its business receives money or property of a third person and the money or property so received is misapplied by any partner while it is in the custody of the partnership." *Id.* at § 25(2).

Courts have distinguished between tort or breach of trust claims, where partners are jointly and severally liable, and contract claims, where partners are only jointly liable. *Ryan v. Brophy*, 755 F.Supp. 595, 597 (S.D.N.Y.1991); *Durban Confectionery Works (Proprietary), Ltd. v. Schnapp's Confections*, 1989 WL 139227, at *1 (S.D.N.Y. 1989); *Jones Knitting Corp. v. A.M. Pullen & Co.*, 50 F.R.D. 311, 314–15 (S.D.N.Y.1970). "The result of that distinction is that, while tort claims may be asserted against the individual partners in the first instance, contract claims must be asserted first against the partnership itself and not the individual partners, unless the partnership is insolvent or otherwise unable to pay its debts." *Ryan*, 755 F.Supp. at 598. Stated another way,

> While under certain circumstances partners may be jointly and severally liable for debts chargeable to the partnership ..., generally their individual assets are chargeable for partnership debts only after the partnership is adjudicated bankrupt, or, under the equitable doctrine of 'marshalling assets', when the joint or partnership property is insufficient to pay partnership debts and there appears to be no effective remedy without resort to individual property.

*Helmsley v. Cohen*, 56 A.D.2d 519, 391 N.Y.S.2d 522, 523 (1st Dep't 1977).

As *Ryan* makes clear, because Arker's breach of trust renders him jointly and sev-

erally liable for the rents collected by Getty after default, CL is entitled to seek satisfaction of this partnership obligation against Arker without demonstrating Getty's insolvency.

III. Conclusion.

Consistent with this opinion, CL's motion for summary judgment is GRANTED; Getty's cross-motion for summary judgment is DENIED; and Arker's cross-motion for summary judgment is DENIED.

SO ORDERED.