**In re ASHFORD APARTMENTS LIMITED PARTNERSHIP, Beach 40 Limited Partnership, HSH Realty Limited Partnership, Ivanhoe Apartments Limited Partnership.**

Bankruptcy Nos. 91–16526–WCH, 91–16527–WCH, 91–16529–WCH and 91–16530–WCH.

United States Bankruptcy Court, D. Massachusetts, E.D.

Sept. 11, 1991.

Robert Somma, Boston, Mass., for debtors.

Jeffrey Sternklar, Boston, Mass., for U.S. Trust Co. and U.S. Trust.

## PRELIMINARY DECISION ON MOTIONS OF UNITED STATES TRUST COMPANY AND U.S. TRUST

WILLIAM C. HILLMAN, Bankruptcy Judge.

This matter came before the Court at a preliminary hearing in accordance with a procedural order of Judge Kenner. While the final evidentiary hearing has not yet been held, the impact of some of the legal issues resolved by the Court at the preliminary hearing upon fifteen other related cases and a larger number of unrelated cases mandates that a decision be issued at this time.

### THE GARAGE INCOME STREAM

█ The Beach 40 Limited Partnership lists among its assets a parking garage.

Some of the parking spaces are "licensed" in bulk, some are "licensed" individually on a month-to-month basis, and others are casually "licensed" by the day. The various forms of agreement used specify that the relationship between the parker and the garage is a license.

In the present context, the issue has arisen as to whether the sums received by the garage are rents, with all the baggage that term carries under the Bankruptcy Code, or some form of personal property collateral as described in M.G.L.A. c. 106, the Uniform Commercial Code.

Neither party, nor the Court's own research, has discovered a case directly on point. Both sides seem to credit *Klingner v. Pocono International Raceway, Inc.,* 289 Pa.Super. 484, 433 A.2d 1357 (1981) with some weight in making a determination, but the Court disagrees. That case held that "revenues from ticket sales, including theatres, stadiums, concert halls, museums, racetracks, ticket agencies, and possibly airlines and transportation companies" are proper UCC Article 9 collateral. The primary benefit one obtains with such a "ticket" is services; a parking space is something else.

Similarly, the numerous cases holding that charges for hotel and motel rooms are not rents emphasize that the service elements of the transaction are more significant than the mere use of space. *See, e.g., In re Oceanview/Virginia Beach Real Estate Associates,* 116 B.R. 57 (Bankr. E.D.Va.1990), *Sacramento Mansion, Ltd. v. Sacramento Savings & Loan Ass'n,* 117 B.R. 592 (Bankr.D.Colo.1990) (California law), and cases cited.

The Court finds that the essential element of the transaction between one parking a vehicle and the proprietor of the parking facility is the provision of the use of space, accompanied by no significant services. Mindful of the licensing language of the parking contract, which may have some utility in the tort context, the court finds that the parking revenues, whether long- or short-term, are rents within the contemplation of the Bankruptcy Code.

## ASSIGNMENT OF RENT ISSUES

There appears to be some factual dispute concerning exactly what steps the mortgagee, which was also the holder of a standard form conditional assignment of rents, took to "perfect" its interest prior to the filing of the petitions in these cases. The resolution of that dispute will come at the scheduled full hearing.

During argument at the preliminary hearing, the parties tried valiantly to reconcile two decisions of this court, *In re Prichard Plaza Associates L.P.*, 84 B.R. 289 (Bankr.D.Mass.1988) (Judge Queenan), and *In re Milford Common J.V. Trust*, 117 B.R. 15 (Bankr.D.Mass.1990) (Judge Lavien). The fact is that they cannot be reconciled completely.

*Prichard* and *Milford* agree that something more than the mere taking of the assignment is necessary. Certainly, from the wording of most assignments, an event of default must have occurred. It is reasonable to assume that some form of notice to affected parties is necessary.

*Prichard* demands possession. In Chief Judge Queenan's view, this requires "a degree of exclusivity", i.e, the activities of the mortgagee/assignee must control the property to the exclusion of the landlord/assignor. *In re Ledgemere Land Corp.*, 116 B.R. 338, 341 (Bankr.D.Mass. 1990).

*Milford* has a lesser standard:

"It is clear, of course, that as a practical matter, the Bank was unable to complete its possession as a result of the Chapter 11 filing and the automatic stay, nonetheless, the cases emphasize that all that is needed under these circumstances, having initially made a valid entry, was to seek relief from the bankruptcy court and that it did.

"Under Massachusetts law, the Bank having made an entry is entitled to the rents." 117 B.R. at 16.

In support of the latter decision, Judge Lavien relies upon *Cook v. Johnson*, 121 Mass. 326 (1876). In that case Gray, C.J., discussed the validity of an entry for purposes of foreclosure. The entering mortgagee did not file his notice on time:

"Although the first entry of the mortgagee was ineffectual for the purpose of foreclosure, because the certificate thereof was not recorded within 30 days as required by the statute, yet that entry, with the notice to the tenant, was sufficient to entitle the mortgagee to rents." *Id.* at 327.

That principle was followed by Judge Freedman in the not too distant past. *Araserv v. Baystate Harness Horse Racing & Breeding Ass'n*, 437 F.Supp. 1083, 1093 (D.Mass.1977).

This court agrees with *Milford*. It holds that a mortgagee/assignee who enters the property and gives notice of that fact to tenants prior to the filing of a petition under the Bankruptcy Code has done all that is required to obtain an interest in rents entitled to protection under Sec. 363. Whether the facts will demonstrate that the moving party here has satisfied that test remains to be demonstrated.

The court is not unmindful of Chief Judge Queenan's concern that the view taken here legally separates the income stream from the obligation to maintain the property. *Prichard, supra*, at 298. However, as a practical matter, the assignee will either protect the income stream by fulfilling a landlord's obligations to the tenants or the income stream will vanish, and so there is a practical incentive to provide the necessary services.

These principles will be the law of the case at the final hearing on the motions.