## In re GEARY'S BOTTLED LIQUORS CO., INC., Debtor.

## GEARY'S BOTTLED LIQUORS CO., INC., Plaintiff,

v.

## INDEPENDENCE ONE FINANCIAL SERVICES, INC.; Chrysler First Business Credit; Joseph Galvin; and William Rosa, Defendants.

Bankruptcy No. 94–16566–WCH.

Adv. No. 94–1682.

United States Bankruptcy Court, D. Massachusetts.

July 18, 1995.

---

**409**

Tali A. Tomsic, Jason Rosenberg, North Andover, MA, for Geary's Bottled Liquors Co., Inc.

Richard Askenase, Shapiro & Kreisman, Framingham, MA, for Independence One Financial Services, Inc.

William J. Hanlon, Goldstein & Manello, P.C., Boston, MA, for Chrysler First Business Credit.

*Decision*

WILLIAM C. HILLMAN, Bankruptcy Judge.

Geary's Bottled Liquors Co., Inc. ("Debtor") is a Massachusetts corporation doing business in the Town of Avon, Massachusetts. It filed a Chapter 11 proceeding in this Court on October 12, 1994. Exercising the powers of a trustee under 11 U.S.C. § 544, as authorized by 11 U.S.C. § 1107, Debtor subsequently brought this adversary proceeding to determine the validity and perfection of certain claimed security interests in its personal property. The defendants, Independence One Finance Services, Inc. ("Independence"), Chrysler First Business Credit ("Chrysler"); Joseph Gavin, Trustee of the Wilna Trust ("Gavin"); and William Rosa, Trustee of Majega Trust ("Rosa"), all allegedly claimed interests.

Default judgments have been entered against Gavin and Rosa, terminating any claim which they might have asserted to the personal property.

At pretrial the remaining parties agreed that the facts were not in dispute and are set out in the pleadings. I took the matter under advisement.

The following are my findings of fact and conclusions of law.

### The Initial Independence Transaction

On June 13, 1989 Debtor executed a $400,000 note in favor of Independence. To secure its obligations, Debtor executed a "Mortgage and Security Agreement" in favor of Independence. The personal property collateral described in that document consists of

"All building materials and components delivered to the Mortgaged Premises whether or not incorporated in the buildings, all furniture, furnishings, machinery, equipment, inventory, building supplies, and appliances, all accounts and contract rights used or useful in the construction, operation, maintenance, or occupation of the Mortgaged Premises or any portion thereof located in or within the said mortgaged premises or any portion thereof,

whether presently owned or hereafter acquired."

An assignment of leases and rents was executed at the same time.

Independence perfected its Uniform Commercial Code security interest as required by M.G.L. c. 106 § 9–401 by filing financing statements with the Town of Avon on June 20, 1989, and with the Secretary of State on June 21, 1989. The collateral description on both forms was

"All fixtures, equipment, inventory, receivables and contract rights now owned by debtor or hereafter acquired and all proceeds received for the disposition of such inventory or other property now owned or hereafter acquired."

### The Initial Chrysler Transaction

On September 26, 1989, Debtor borrowed $100,000 from Chrysler. As security it granted a mortgage, assignment of rents, and a security agreement covering furniture, fixtures and equipment. Financing statements were filed with the Town of Avon and the Secretary of State on September 28, 1989. The collateral description is:

"All machinery, fixtures and equipment of every kind and nature whatsoever forming a part of said buildings or other structures located at 155 E. Main Street, Avon, MA including, but without limitation, portable or sectional buildings, electrical equipment, gas equipment, plumbing equipment, heating, air conditioning and ventilating equipment, elevators and escalators, awnings, screens, storm doors, storm windows, blinds, shades, cabinets, stoves, disposals, refrigerators, dishwashers, floor coverings, lobby furnishings, sprinkler equipment, incinerating equipment, firm alarm systems and swimming pool and other recreational equipment, trees, hardy shrubs and perennial flowers, and also including all materials stored on the Land for incorporation into the Improvements. All machinery, fixtures and equipment and other articles of personal property now or at any time

hereafter attached to, placed upon, or used in any way in connection with the use, enjoyment, occupancy, or operation of the buildings or structures located at 155 E. Main Street, Avon, MA. Also, all rights in Liquor License issued to Debtor by Town of Avon."

The record does not contain a copy of Chrysler's security agreement, but it is agreed that such a document exists. As will be seen, that failure of proof is of no consequence and I will assume that the Chrysler security agreement contains the same collateral description as that quoted from the financing statements.

### Where Matters Were

It would be an interesting exercise to analyze exactly what collateral is covered by each of the financing statements, but that would be academic.[1] It is sufficient to conclude as a matter of law that both Independence and Chrysler had, at one time, valid and perfected security interests in some items of personal property owned by Debtor. Discussion of the claims to rents will follow.

### The Life of a Financing Statement

Massachusetts adopted the Uniform Commercial Code provisions dealing with the life of a financing statement directly from the Official Text. It is a long section, and I have added bracketed letter captions to the individual sentences to make further reference easier. With that modification from the actual text, the statute as applicable here reads:

[A] "... a filed financing statement is effective for a period of five years from the date of filing. [B] The effectiveness of a filed financing statement lapses on the expiration of the five year period unless a continuation statement is filed prior to the lapse. [C] If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains per-

---

1. Independence appears to have a broader collateral description in its financing statements than in its Mortgage and Security Agreement. The expansion does not, of course, increase the scope

of the coverage of the security interest. *See Federal Land Bank v. Bay Park Place, Inc.,* 162 Mich.App. 1, 412 N.W.2d 222 (1987).

fected until termination of the insolvency proceedings and thereafter for a period of sixty days or until expiration of the five year period, whichever occurs later. [D] Upon lapse the security interest becomes unperfected, unless it is perfected without filing....

"(3)[E] A continuation statement may be filed by the secured party within six months prior to the expiration of the five year period specified in subsection (2). [F] Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective. [G] A continuation statement signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and complying with subsection (2) of section 9–405...."

M.G.L. c. 106 § 9–403(2), (3).

*Independence Attempts to Continue*

■ The five year term of the Independence filings might have terminated as early as June 20, 1994, or as late June 22, 1994.[2] *See* cases collected at William C. Hillman, *Documenting Secured Transactions* 22–2, 22–3 (8th ed. 1995) (*"Hillman "*). It is unnecessary to make a finding as to an exact date, as the only action which could possibly constitute the action required by § 9–403 took place on June 17, 1994, well within the five years under any viable theory.

On that date a modified financing statement form UCC–1, correctly naming the parties, was filed with the Avon Town Clerk. It referred to the prior filings by date and number but did not comply with the requirements of the statute for a continuation statement in two respects. First, it did not "state

that the original statement is still effective." § 9–403(3)[F]. Second, it is signed by Emilie A. Geary ("Emilie"), in her capacity as President of the Debtor, rather than the secured party. *Id.* There was no separate written statement filed as required when a continuation statement is signed by someone other than the secured party of record. § 9–403(3)[G].

These factors lead to further interesting legal issues, once again of only academic interest. For example, could the "continuation statement" be regarded as a new financing statement? Might Emilie be found to be an agent of Independence? Could we intuit the required statement that the financing statement remains effective from the references back to the prior filings? Is omission of "remains effective" a minor error and if so does § 9–402(8)[3] apply to continuation statements? At least in this case we shall never know, for Independence has yet another problem—it did not file a continuation statement with the Secretary of State.

Independence properly followed the dual filing scheme of M.G.L. c. 106 § 9–401(c) in its original filings. Must it file the continuation statement in the same places?

The only logical answer is affirmative. The effectiveness of a filed financing statement lapses on the expiration of the five year period absent continuation. § 9–403(3)[B]. If there is no continuation statement at one filing location it is as if there had not been a filing there in the first place; nothing would be found by a searcher.[4] To endorse a rule that creates a different place of filing requirement for a continuation statement would undercut the notice-to-third-parties philosophy that may underlie the filing system.[5]

---

**2.** If Mass.R.Civ.P. 6(a) applies, "the day of the act ... after which the designated period of time begins to run shall not be included."

**3.** "A *financing statement* substantially complying with the requirements of *this section* is effective even though it contains errors which are not seriously misleading." M.G.L. c. 106 § 9–402(8). (Emphasis added). *But see* cases collected at *Hillman*, 22–6 n. 29 applying the statute to continuation statements.

**4.** "Unless a filing officer has notice of an action pending relative thereto, he may remove from the files and destroy ... a lapsed financing statement...." M.G.L. c. 106 § 9–409.

**5.** The notice theory of perfection has been described as "the mythology of Article 9." Robert E. Scott, *The Politics of Article 9*, 80 Va.L.Rev. 1783, 1801 (1994).

Professor Gilmore was troubled by this situation from the earliest days of the Uniform Commercial Code:

"A theory basic to filing systems is that only 'due' or 'proper' filing, made in complete and literal compliance with the statute, counts. An 'improper' filing does not give constructive notice to anyone and, under the most extreme decisions, does not even bind someone who (by turning it up in the files) has actual notice. A multiple filing requirement raises the 'improper filing' question in a particularly acute form. When a filing party (acting, let us assume, in good faith) has filed in some but not all of the required places, does he lose all his protection? ... Unfortunately most of the statutes under which multiple filing situations can arise contain no hint of a solution."

1 Grant Gilmore, *Security Interests in Personal Property* 505 (1965).

He continues:

"This unfortunate solution [the dual filing system] has usually been a compromise between advocates of a statewide filing system and those of local filing units. In an attempt to make the best of both worlds, the resulting statute maintains both systems and requires filing in both. It is predictable that there will be many failures to comply with these complicated provisions. It is also predictable that the courts, without giving much thought to the matter, will automatically follow the nineteenth century cases, handed down at a time when multiple filing situations were infrequent and when the penalties for noncompliance were much less severe than they have since become."

*Id.* at 509.

Gilmore resolved his doubts a few pages later. He hypothesized a situation based upon another aspect of the dual filing system—that if a debtor has a place of business in more than one locality, there is no need for local filing:

"A financing statement covers equipment owned by a debtor whose single place of business is located in county A. If § 9–401(1) has been enacted with the double filing provisions, filing is required both in the state files and in county A. The secured party, believing that the debtor also has a place of business in county B, makes only a state filing.... [T]he interest would not be perfected and would be invalid in the debtor's bankruptcy."

*Id.* at 527.

I agree with Gilmore's ultimate conclusion and find that Independence failed to continue the perfection of its security interest by its failure to file with the Secretary of State. It held only an unperfected security interest in such of the described collateral as is subject to the perfection requirements of the Uniform Commercial Code.

### Chrysler Attempts to Continue

The five year term of the Chrysler filings ended about September 29, 1994, using the same fuzzy logic as discussed above. It is stipulated that Chrysler timely filed a continuation statement with the Town of Avon, but did not similarly file with the Secretary of State.

For the same reasons as stated above, I find that Chrysler failed to continue the perfection of its security interest in collateral required to be perfected under the Uniform Commercial Code and hence held only an unperfected security interest at the time that Debtor filed under Chapter 11.[6]

### The Claims to Rents

■ Both Independence and Chrysler obtained assignments of leases and rents as part of the collateral packages. Assignments of rents are excluded from the scope of the Uniform Commercial Code, M.G.L. c. 106 § 9–104(1), and are created and enforced under real estate law.

The Independence assignment is absolute in form, with the possible exception of an

---

6. It is interesting to note that September 29, 1994 was only about two weeks before Debtor filed its Chapter 11 petition. Had Debtor filed prior to September 29, Chrysler's perfection would have been continued without refiling until the termination of the insolvency proceedings. § 9–403(2)[C].

implied right of the assignor to continue to collect rents until default:

> "The Assignor hereby authorizes and directs the Lessees under the Lease or other occupants of the Premises, upon receipt from the Mortgagee of written notice of default as provided in this paragraph, to pay over to the Mortgage [sic] all rents, income and profits arising from the Lease or the Premises and to continue to do so until otherwise notified by the Mortgagee...."

The Chrysler assignment is absolute without anything akin to the quoted provision.

Once again we are faced with an "if only" situation involving timing.

If this case had been filed after October 22, 1994, both rent assignments might have been validated by 11 U.S.C. § 552(b)(2), as added by § 215(a) of the Bankruptcy Reform Act of 1994 ("BRA 1994"), which as effective on that date.[7] BRA 1994 § 702(a). Alas, the petition was filed ten days earlier, prior to the effective date of the Reform Act.[8]

As a result, this case will be controlled by prior law, and we encounter the conflicting decisions of the judges of this Court noted in *In re Ashford Apartments Limited Partnership*, 132 B.R. 217 (Bankr.D.Mass.1991). I ruled in that case that a mortgagee/assignee who enters the property and gives notice of the fact of entry to tenants has done all that is needful "to obtain an interest in rents entitled to protection under Sec. 363." *Id.* at 219. Implicit in that conclusion is the determination that doing anything less is inadequate. I assumed (it was a preliminary hearing) that the assignment of rents was conditional.

I dealt in more depth with the issue of absolute versus conditional assignments in *In re McCann*, 140 B.R. 926 (Bankr.D.Mass.

1992). While that case involved Ohio law the discussion is of general application. Subsumed in *Ashford* and *McCann* is a recognition that nothing further need be done to obtain § 363 protection for an absolute assignment of rents.

 The quoted language from the Independence assignment raises an eyebrow, but it is not sufficient to deprive the assignment of its essential absolute character. As a result, I find as a matter of law that both Independence and Chrysler have valid assignments of rents. Independence is first in time. If that does not resolve the priority dispute, I am sure that I will be hearing from the parties with appropriate pleadings.

### Conclusion

Turning to the specific prayers for relief of the complaint, I hold as follows:

1. The claimed security interests of Independence and Chrysler are invalid against the debtor in possession, except as to rents.

2. Both Independence and Chrysler have valid and perfected interests in rents; Independence is prior in time.

3. The assets which were the subject of the alleged security interests are property of the estate of the Debtor.

A judgment consistent with these conclusions will enter.

---

7. "Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents and ... acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise."

8. I have heard learned commentators opine that the amended § 552(b) does not solve the problem, but that, too, is for another day.