In re Vincent C. LYONS and
Mary E. Lyons, Debtors.

Vincent C. LYONS and Mary
E. Lyons, Plaintiffs,

v.

The FEDERAL SAVINGS
BANK, Defendant.

Bankruptcy No. 95–18036–CJK.
Adv. No. 96–1014.

United States Bankruptcy Court,
D. Massachusetts.

March 25, 1996.

---

**12.** Given this decision, I will not rule on any motions pending in the case.

Keith A. Mitchell, Boudreau & Mitchell, Lexington, MA, for Debtors/Plaintiffs.

Jeffrey S. Ogilvie, Kaye, Fialkow, Richmond & Rothstein, Boston, MA, for Defendant.

## MEMORANDUM

JOAN N. FEENEY, Bankruptcy Judge.

### I. INTRODUCTION

The matters before the Court are the Debtors' Complaint for Turnover and Motion to Use Cash Collateral and the Defendant's Opposition thereto, as well as the Defendant's Motion for Summary Judgment and the Debtor's Objection thereto. On January 16, 1996, the Court held a hearing on the Debtor's Complaint and Motion to Use Cash Collateral. The Court took both matters under advisement and ordered the parties to file supplemental briefs by January 26, 1996. On January 26th, the Defendant filed a Motion for Summary Judgment seeking dismissal of the Complaint, to which the Debtors filed an Opposition and a reply brief on February 2, 1996. Three days later, the Debtors filed notices of a trust amendment and resignation of a trustee. On February 9, 1996, the Court allowed the Defendant's "Motion for Leave to File a Limited Reply to Debtors' Opposition to Motion for Summary Judgment and Reply Brief," which brief was filed on February 20, 1996. Based upon the pleadings, affidavits and exhibits submitted, the Court now makes the following findings of fact and conclusions of law. *See* Fed. R.Bankr.P. 7052.

### II. FINDINGS OF FACT

Vincent C. Lyons ("Mr. Lyons") established the V & M Realty Trust (the "Trust") on August 18, 1972. The Declaration of the V & M Realty Trust ("Trust Declaration") provides in relevant part the following:

ARTICLE IV—PURPOSE The purpose of this Trust is to deal in and with, buy, purchase, own, acquire, hold, exchange, convey, sell, lease, sublease, rent, mortgage ... land and real estate of every kind, nature and description and all kinds of personal or mixed property incidental thereto ...; to do and perform all things needful [sic] and lawful for carrying same out.

ARTICLE VI—TRUSTEE–POWERS The Trustee ... shall have power with regard to both real and personal property constituting[ ] the trust res ... to mortgage, ... to sell ... to determine who are the distributees hereunder and proportions in which they shall take; ... and generally he shall have absolute and entire control, administration, management and disposition of the trust res ... upon such terms as he [sees] fit and to do all the things in relation to the trust res as if the Trustee was absolute owner of the trust res and this Trust had not been executed....

ARTICLE X—ACCOUNT OF TRUSTEE The Trustee shall render each year an account of his administration of the Trust to the beneficiaries....

ARTICLE XI—BENEFICIARIES The Beneficiaries hereunder are the wife and children of Vincent C. Lyons.

ARTICLE XII—RESTRICTIONS The interest of any beneficiary hereunder ... shall not be anticipated, alienated, or in any way or other manner assigned by such beneficiary....

ARTICLE XIII—INTEREST OF BENEFICIARIES No title[,] interest or estate in any lands, buildings or other property held by the Trustee at any time hereunder is to vest in the beneficiaries, the interest of the beneficiaries being equitable; the beneficiaries shall have no right to call for any partition or distribution during the continuance of the Trust; and the sole right, claim and interest of beneficiaries shall be in the obligation of the Trustee hereunder to hold, manage, apply, dispose of the trust res and account for the income and proceeds thereof in the manner provided for herein.

ARTICLE XIV The Trustee shall declare dividends from the net income or profit of the trust res for the beneficiaries ... if the

income and profits accumulated in the discretion of the Trustee justifies a dividend to be declared and his decision as to the amount of the dividends shall be final; and the Trustee may make distribution to the beneficiaries of any uninvested capital at any time as said Trustee may in his judgment decide. . . .

**ARTICLE XVI** This agreement may be amended from time to time by a unanimous vote of the Trustee and beneficiaries. . . .

**ARTICLE XVIII—RESIGNATION ET CETERA OF TRUSTEE** The Trustee hereunder may resign. . . . (a) The Trustee may nominate and appoint a succeeding Trustee by a written instrument . . . assented to by the beneficiaries. . . .

**ARTICLE XIX—TERMINATION** The Trustee may terminate this Trust at any time by the sale of the res and turning over the proceeds thereof to the beneficiaries hereunder as provided heretofore and the Trustee may alter, amend or terminate this Declaration with the consent of the beneficiaries. . . . The instrument setting forth such alteration, amendment or termination shall be executed and acknowledged by the Trustee, assented to in writing by the beneficiaries and recorded. . . .

Mr. Lyons was the sole trustee until October 31, 1989, when he amended the Trust and appointed his wife, Mary E. Lyons ("Mrs. Lyons"), as co-trustee. She accepted the appointment in writing, and the beneficiaries assented to her appointment. On May 31, 1994, Mr. Lyons purported to amend the Trust further by deleting Article XI and replacing it with a provision naming himself and his wife as the sole beneficiaries. Although Mrs. Lyons assented to the amendment as a beneficiary, she did not execute the amendment in her capacity as co-trustee.[1] The Lyons' children also assented to the amendment. After the January 16, 1996

hearing in this matter, Mr. and Mrs. Lyons amended the Trust on January 25, 1996 to name Mrs. Lyons the sole beneficiary. Mr. Lyons resigned as co-trustee on January 29, 1996.

Mr. and Mrs. Lyons (the "Debtors") filed a voluntary Chapter 13 petition on November 28, 1995.[2] On Schedule A—Real Property, the Debtors listed five properties, including 157–159 School Street and 122–138 Bacon Street, both in Waltham, Massachusetts (collectively the "properties"), which are multi-unit rental properties and the subject of this adversary proceeding.

On February 23, 1987, Mr. Lyons, in his capacity as Trustee of the V & M Realty Trust, executed an Adjustable Rate Note, Mortgage, 2–4 Family Rider (Assignment of Rents) (the "Assignment") and Adjustable Loan Rider (collectively the "Mortgage Documents") in favor of The Federal Savings Bank ("FSB" or the "Bank") with respect to the Bacon Street properties. On March 30, 1987, the Debtors, as trustees of the V & M Realty Trust, executed the same four mortgage documents with respect to the School Street property. Mrs. Lyons was not a trustee at the time that she signed the School Street Mortgage Documents as a co-trustee.

The assignment incorporated into each mortgage provides the following:

**F. ASSIGNMENT OF RENTS.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, *prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This*

---

**1.** Also on May 31, 1994, the Lyons filed a joint Chapter 11 petition captioned "Vincent C. Lyons, Beneficiary under V & M Realty Trust and Mary E. Lyons, Beneficiary under V & M Realty Trust," which was later dismissed.

**2.** This is the Lyons' third bankruptcy case. Their Chapter 11 case, which was filed on May 31,

1994, was dismissed on July 7, 1994. *See* 94–13608–CJK. On March 8, 1995, the Debtors filed a voluntary petition under Chapter 13. The Court granted their motion to dismiss this Chapter 13 case on September 14, 1995. *See* 95–11563–JNF.

*assignment of rights constitutes an absolute assignment and not an assignment for additional security only.*

If Lender gives notice of breach to Borrower: (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the rents of the Property; and (iii) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph F.

*Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.* However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. *This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.*

Assignment, ¶ F. (emphasis added). The Mortgage Documents were properly recorded.

FSB and the Debtors entered into forbearance agreements on June 1, 1991, May 6, 1992 and May 5, 1995. However, the Debtors fell into arrears shortly after they entered into the May, 1995 agreement. On October 17, 1995, the Bank's counsel notified the Debtors' counsel that if the Debtors did not bring "their loan balances current within the terms of the May 5, 1995 agreement on or before October 27, 1995, the Bank will consider them in breach of that agreement and enforce its rights under the notes and mortgages which are secured by the Lyons' properties." Although the Debtors dispute that they received notice of their breach, their counsel received FSB's October 17th letter. Notice to the Debtors' attorney was sufficient since FSB was aware of counsel's representation of the Debtors through their earlier bankruptcy filing.

On November 1, 1995, David W. Silverstein, Vice President of FSB, notified the tenants of the Bacon and School Street properties in writing that rents should be paid to FSB's property manager, Robert Marcus Real Estate Company ("RMRE").[3] RMRE has been collecting rents from all tenants of the properties since November of 1995. However, according to affidavits signed by tenants of the properties, FSB "is not willing to intervene with regard to issues including maintenance, repairs and snow removal." The tenants also stated in affidavits that they are "discontent[ed] with the current possession of the premises, and if it continues, ... will be forced to consider other living alternatives."[4] The Debtors' son, Michael Lyons, filed an affidavit in which he stated that he personally provided maintenance services for a commercial tenant of one of the properties after RMRE indicated to the tenant that it was not responsible for repairs. Neither FSB nor RMRE alleged that they made entry onto the properties.

The bank sent a letter to the Trustees of the Trust on November 15, 1995, stating "[i]f you expect the Bank to work with you on this matter then we must have your assurance that you and your agents will not interfere with the orderly collection of rents." Mrs. Lyons indicated her assent to this proposal by signing the letter under the words "[a]greed to."

FSB scheduled foreclosure sales for both properties for December 16, 1995, which were stayed as a result of the Debtors' bank-

---

3. Mr. Silverstein's letter to the tenant occupying Apartment #3 of the 128 Bacon Street property states "... the Lender is not at this time taking possession of the Premises and assumes no obligations, liability or responsibility whatsoever for the management or operation thereof, notwithstanding the collection of rents...." The Bank states that the tenant requested the letter.

4. In its brief filed on February 20, 1996, the Bank alleges that the tenants' affidavits were procured by misrepresentations made by the Debtors' son, Michael Lyons, to the tenants to the effect that the Bank intended to evict them.

ruptcy filing. To date, FSB has not moved for relief from stay, seeking authority to proceed with its foreclosure sales. On December 28, 1995, Debtors' counsel requested that the Bank turnover possession of the properties to the Debtors. The Debtors intend to use the rent proceeds to fund their Chapter 13 plan.[5] FSB did not comply with the Debtors' request, resulting in the Debtors bringing this adversary proceeding.

On Schedule I—Current Income of Individual Debtor(s), the Debtors reported monthly income from real property in the amount of $9,490.00 and social security income of $825.00. On Schedule J—Current Expenditures of Individual Debtor(s), the Debtors indicated that they have monthly mortgage payments totalling $7,013.00, common expenses and insurance in the amount of $867.00 for the two properties, as well as $1,737.00 in additional personal expenses, including $1,159.00 for their home mortgage payment. The Debtors' Schedules I and J reveal that without the rental income from the Bacon and School Street properties, the Debtors would have insufficient income to make their mortgage payment on their personal residence, pay their utilities and other personal expenses and fund a Chapter 13 plan. Moreover, the Court notes that the Debtors' Schedules I and J do not list any expenditures for home maintenance, taxes (even though the Internal Revenue Service has a lien on their residence in the sum of approximately $8,250.00), clothing, laundry or their 1987 Chrysler automobile.

Through their plan, the Debtors propose to pay $1,032.00 per month for sixty months. This sum includes arrearages but not regular mortgage payments on the properties, plus a 10% dividend to unsecured creditors. According to the plan, the Debtors' source of payment is their future earnings, income and wages.

**5.** According to the affidavit of Michael Lyons, he and other family members have contributed in excess of $7,000.00 since November of 1995 to the Trust for the purpose of maintaining the properties and his parents' home, which is also subject to a mortgage held by FSB. The bank disputes the amount that the children have contributed.

## III. POSITIONS OF THE PARTIES

The Debtors filed two briefs, the first in support of their Complaint for Turnover and Motion to Use Cash Collateral and the second in reply to FSB's Motion for Summary Judgment. The Bank filed a memorandum in support of its Motion for Summary Judgment and two briefs, the first in reply to the Debtors' brief and the second in reply to the 1996 trust amendment and Mr. Lyons' resignation as trustee.

### A. The Debtors

In their first brief, the Debtors argue that the Trust is a nominee trust because Mrs. Lyons held both legal title and a beneficial interest in the properties as of the petition date. Additionally, the Debtors' brief states that:

the Trust *shall be* amended to name Vincent Lyons and Mary Lyons as sole beneficiaries. As such, under the doctrine of "merger," legal and equitable title to the [p]roperties shall be held by the Debtors, and subject to this Court's jurisdiction. *See* 11 U.S.C. § 1306(a)(1) (property of the estate includes property acquired post-petition).

Debtors' Brief, p. 7 n. 6 (emphasis added).[6] Therefore, according to the Debtors, the properties constitute "property of the estate" within the meaning of 11 U.S.C. § 541(a)(1). In their second brief, the Debtors claim that they either will change the beneficial interests to create a merger of title or cause the assets to be transferred to the Debtors individually, thus mooting the trust issue.

Alternatively, relying primarily upon *In re McCann,* 140 B.R. 926 (Bankr.D.Mass.1992), the Debtors maintain that the assignment of rents is conditional rather than absolute because (1) they had the right to receive the rents until they received notice of breach; (2) they were required to collect the rents for the benefit of themselves and FSB, thus

**6.** The Debtors' brief was filed on January 26, 1996. However, just one day earlier, the Trust was amended so as to make Mrs. Lyons the sole beneficiary.

retaining a beneficial interest in the rents; and (3) the assignment would terminate when the debt was paid in full. According to the Debtors, the parties intended that the rent assignment provisions would constitute additional security for the loans, and would not be absolute assignments, because no additional consideration was given for the assignments and the riders were incorporated into and attached to the mortgages. Additionally, citing *In re Prichard Plaza Associates Limited Partnership,* 84 B.R. 289 (Bankr.D.Mass.1988), the Debtors argue that because Massachusetts is an "intermediate state" in which a mortgagee holds legal title and a mortgagor has a right of possession and a right to collect rents, Massachusetts courts would not recognize an absolute assignment of rents.

The Debtors deny that they received written notice of the breach, as required by the mortgage documents. They also contend that, in order to be entitled to the rents, the Bank should have entered the properties and given the tenants notice of the assignment.

Since the rents constitute property of the estate, the Debtors first requested a hearing on the issues of cash collateral and adequate protection. In their second brief, however, the Debtors, citing *In re Mullen,* 172 B.R. 473 (Bankr.D.Mass.1994), argue that "the rental stream is constant" and, therefore, the Bank holds a replacement lien of equal value. Thus, in the Debtors' view, an adequate protection order allowing the Bank to retain the rents, in effect, would lead to a foreclosure by the Bank of its security interest at a time when the value of such security interest is not declining. *Id.* at 479. Additionally, the Debtors, again relying upon *Mullen,* argue that the "equities of the case" do not justify an adequate protection order, which would result in the Bank "enjoying the fruits of the Debtor[s'] labor," and that such an order would improve FSB's position because the rents would be applied to principal. *Id.* Lastly, the Debtors claim that the issue of adequate protection should not be decided based upon the feasibility of their plan be-

cause their children "are ready and able to contribute financially to fund a Plan." Alternatively, the Debtors suggest that they may convert their Chapter 13 case to a case under Chapter 11.

### B. *The Bank*

In its first brief, FSB argues that the properties are owned not by the Debtors but by the Trust, which is not a nominee trust, and, therefore, that the rents collected from the properties do not constitute property of the Debtors' estate. In support of its contention that the Trust is not a nominee trust, the bank points to the provisions of the Trust which (1) grant the trustee "absolute and entire control ... of the trust res;" (2) prohibit alienation of the beneficiaries' interests; (3) require a unanimous vote of the trustees and beneficiaries for amendment; and (4) authorize the trustees, not the beneficiaries, to terminate the Trust. According to FSB, these provisions indicate that the trustees are not the agents of the beneficiaries and, thus, the Trust is not a nominee trust. Therefore, only the Debtors' beneficial interests in the Trust, which the bank characterizes as intangible personal property rather than the real property that comprises the trust res, constitute property of the estate.

The Bank challenges the validity of the 1994 Trust amendment on grounds that only one trustee, Mr. Lyons, signed the amendment, in violation of Article XVI, which requires that both trustees execute an amendment. Therefore, the Lyons' children continue to be beneficiaries of the Trust. Alternatively, if the 1994 amendment is deemed to be valid, FSB argues that the merger doctrine does not apply since "each of the co-trustees is a trustee for the other beneficiary."

In its second brief, the Bank characterizes the 1996 post-hearing amendment as "a mere subterfuge." FSB argues that the properties were acquired by a Debtor, Mrs. Lyons, rather than by the Debtors' estate. Therefore, pursuant to 11 U.S.C. § 541(a)(7) [7], the

---

7. Section 541(a)(7) provides that:
 (a) The commencement of a case under section 301, 302, or 303 of this title creates an
 estate. Such estate is comprised of all the following property, wherever located and by whomever held: ...

properties cannot become property of the Debtors' estate.

Alternatively, citing *First Fidelity Bank, N.A. v. Jason Realty, L.P. (In re Jason Realty, L.P.),* 59 F.3d 423 (3rd Cir.1995), the Bank contends that it holds an absolute assignment of rents, title to which passed to FSB upon execution of the assignment. According to the Bank, the language of the assignment clearly indicates that it is absolute, not conditional, and absolute assignments are recognized under Massachusetts law. Therefore, the rents are owned by the Bank and are not property of the Debtors' estate.

■ FSB argues that, even if the rents are deemed to be cash collateral, the Debtors are not capable of providing the Bank with adequate protection as required by 11 U.S.C. § 363(e). Adequate protection is a condition precedent to obtaining turnover. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 207, 103 S.Ct. 2309, 2314–15, 76 L.Ed.2d 515 (1983). According to the Bank, the Debtors have no equity in the properties because the liens and encumbrances on each property exceed their liquidation and fair market values. Additionally, the Bank maintains that the Debtors' plan does not provide for the payment of outstanding real estate taxes and water and sewer taxes. The Bank contends that the monthly rents collected are less than the Debtors' estimates and are insufficient to fund the plan, and that the Debtors unreasonably underestimated their monthly expenses. The Bank criticizes the Debtor's reliance upon *Mullen* since they "have not proposed a confirmable Chapter 13 Plan even if the entire rental stream is devoted to payments under the Plan." Lastly, the Bank argues that gifts are insufficient to fund a plan and the Debtors' suggestion that their children will contribute to the plan is equivalent to an acknowledgement that their plan is not confirmable.

(7) Any interest in *property that the estate acquires* after the commencement of the case.

11 U.S.C. § 541(a)(7) (emphasis supplied).

8. The Court surmises that the purported amendment was intended to bring the properties into the bankruptcy estate that was created that same

## IV. DISCUSSION

The Court must determine (1) whether the properties constitute property of the estate pursuant to 11 U.S.C. § 541 and, if so, (2) whether the rents from those properties constitute property of the estate. If both issues are resolved in the Debtors' favor, then the rents are cash collateral, and the Court must consider whether the Debtors can provide the Bank with adequate protection.

### A. The V & M Realty Trust

The parties briefed the issue of the Trust's status both on the petition date and after the post-hearing 1996 amendment and resignation of Mr. Lyons. Therefore, the Court shall discuss the nature of the Trust at each period of time.

### 1. Status of the Trust on the Petition Date

■ As a preliminary matter, the Court notes that the Debtors have not always complied with the terms of the Trust and, therefore, the identity of the Trust's beneficiaries and trustees is, at first blush, confusing. The Court finds that the May 31, 1994 amendment, which purported to name Mr. and Mrs. Lyons as the beneficiaries, was invalid because it was not executed in accordance with the Trust's terms.[8] In order for the Trust to be amended, there must have been a "unanimous vote of the Trustees[s] and beneficiaries" in accordance with Article XVI, and the instrument must have been "executed and acknowledged" by the trustees, in accordance with Article XIX. Although Mrs. Lyons assented to the amendment as a beneficiary, she did not sign the amendment as a co-trustee, despite her appointment as such almost five years earlier.[9] In fact, the amendment describes Mr. Lyons simply as trustee rather than co-trustee, clearly ignoring the 1989 amendment, pursuant to which Mrs. Lyons was appointed co-trustee. The January 25, 1996 post-hearing

day upon the filing of the Debtors' first bankruptcy petition.

9. Interestingly, as noted above, Mrs. Lyons executed the School Street mortgage documents as a co-trustee in 1987, two years prior to her appointment as such in October, 1989.

amendment, pursuant to which Mrs. Lyons was made sole beneficiary, properly lists the co-trustees and is assented to by Mrs. Lyons and the Lyons children. This indicates that neither the trustees nor the beneficiaries considered the 1994 amendment, pursuant to which Mr. and Mrs. Lyons were purported to be the Trust beneficiaries, to be valid. If the 1994 amendment had been valid, then only the assent of the Debtors, and not that of their children, would have been required to effect the 1996 amendment. Therefore, the Court finds that, on the petition date, Mr. and Mrs. Lyons were co-trustees and that Mrs. Lyons and the Lyons children were beneficiaries of the Trust.

■ An examination of the Trust Declaration as it existed on the petition date compels the conclusion that it is not a nominee trust. A nominee trust is one in which the beneficiaries have the "power to direct the trustee's activities with respect to the trust property." *In re Village Green Realty Trust*, 113 B.R. 105, 114 (Bankr.D.Mass.1990) (citations omitted). Under such a trust, because the trustees perform only "perfunctory duties," *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 893 (1st Cir.1979), "it makes sense to view the beneficiaries as the owners of the trust res." *Village Green*, 113 B.R. at 114.

■ In the instant case, the beneficiaries, namely Mrs. Lyons and the Lyons' children, had no power to direct the trustees' activities. Although the trustees were required to provide the beneficiaries with an annual accounting and to obtain their consent in order to amend or terminate the Trust, the trustees exercised "absolute and entire control ... of the trust res." The trustees alone had the power to determine the "distributees" and their proportionate share of the trust res, to declare dividends and to distribute uninvested capital to the beneficiaries.[10] The beneficiaries' interests were solely equitable and subject to a spendthrift provision. Under Article XIII, the beneficiaries had "no right to call for any partition or

distribution" of the trust res. Thus, the trustees did not act as agents for the beneficiaries and the Trust cannot be characterized as a nominee trust. *Cf. Roberts v. Roberts*, 419 Mass. 685, 687–688, 646 N.E.2d 1061 (1995); *In re Simon*, 179 B.R. 1, 5 (Bankr. D.Mass.1995) (trust deemed nominee trust because trust declaration provided that trustee's powers were "subject to the direction or consent of the beneficiaries"); *In re Eastmare Development Corp.*, 150 B.R. 495, 499 (Bankr.D.Mass.1993). Therefore, on the petition date, the properties were not owned by the Debtors, did not constitute "property of the estate," and only Mrs. Lyons had an equitable interest in the Trust properties that constituted intangible personal property.

### 2. The Post–Hearing Amendment and Resignation

■ The 1996 amendment, which named Mrs. Lyons as the sole beneficiary, and Mr. Lyons' January 29, 1996 resignation vested both legal title and beneficial interest solely in Mrs. Lyons. Accordingly, legal and equitable title merged in Mrs. Lyons, thus terminating the Trust. As the Trust was terminated, the issues of whether the Trust is a nominee trust, and the Bank's contention that merger cannot be accomplished because each co-trustee serves as a trustee for the other beneficiary are mooted.

■ These changes to the Trust were made *after*: (1) the Bank began collecting the rents, (2) the filing of the Debtors' bankruptcy petition, and (3) the January 16, 1996 hearing at which time the Court took the matter under advisement. As a result of the eleventh-hour machinations by the Debtors, the 1996 amendment and resignation rendered the trust res "property of the estate" by virtue of section 1306, which provides the following:

(a) [p]roperty of the estate includes, *in addition to the property specified in section 541* of this title[:] (1) all property of

---

10. The instant case is distinguishable from *In re Cowles*, 143 B.R. 5 (Bankr.D.Mass.1992), in which the debtor/settlor of a trust alone held "the powers to revoke, alter or amend the trust, as well as the powers to change the identity and number of trustees and beneficiaries and to with-

draw any part or all of the property of the trust." *Id.* at 7. Thus, the *Cowles* trust's assets were held to be reachable by the debtor's creditors. *Id.* at 9. In the instant case, the Debtors cannot terminate, alter or amend the trust without the assent of the beneficiaries.

the kind specified in such section *that the debtor acquires after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first....

11 U.S.C. § 1306(a)(1) (emphasis supplied). The Court rejects the Bank's argument that post-petition property must be acquired by the estate rather than by the Debtors in order to constitute "property of the estate." The Bank's argument, which is based upon section 541(a)(7), lacks merit because it ignores the clear language of section 1306(a)(1), which brings into the estate property acquired post-petition by the Debtors individually.

### B. *The Assignment of Rents*

#### 1. *Case Law Principles*

■ Having determined that the Trust properties constitute property of the Debtors' estate, the Court must now consider whether the Debtors had any interest in the rents produced by those properties, or whether the Bank holds title to the rents pursuant to the assignment and the Debtors' default. Resolution of this issue turns on whether the two assignments are absolute assignments or assignments for additional security only. If they are absolute, then upon default by the debtor, "the assignee/mortgagee would have a right to rents without any further action on its part." *In re Harvey Road Associates VIII*, 140 B.R. 302, 304 (Bankr.D.Mass.1992) (citing *Great West Life Assurance Co. v. Rothman (In re Ventura–Louise Properties)*, 490 F.2d 1141 (9th Cir.1974)); *see also Jason Realty*, 59 F.3d at 428; *McCann*, 140 B.R. at 927. However, if the assignments constitute simply additional security for the loans, the Court must consider the ramifications of 11 U.S.C. § 552(b)(2). Courts that have considered the nature of assignments given to lenders in the context of a lending transaction have reached different results.

One line of cases holds that, although language of an absolute nature may be used in the instrument, the assignment nevertheless affords the lender-assignee only additional security for a debt. *See McCann*, 140 B.R.

at 927; *Harvey Road*, 140 B.R. at 304; *In re Bethesda Air Rights Limited Partnership*, 117 B.R. 202, 206 (Bankr.D.Md.1990); *In re Willowood East Apartments of Indianapolis II, Ltd.*, 114 B.R. 138 (Bankr.S.D.Ohio 1990). In *Wolters Village, Ltd. v. Village Properties, Ltd. (Matter of Village Properties, Ltd.)*, 723 F.2d 441, 443 (5th Cir.1984), the Fifth Circuit observed that "[c]ourts have been reluctant to construe assignment[s] of rents as absolute assignments" and that the presumption is that they "create a security interest." 723 F.2d at 443.

These cases focus upon the substance of the transaction, concluding that the assignment is a component of a financing transaction and, thus, constitutes a pledge of collateral. *Cf. In re Gould*, 78 B.R. 590 (D.Idaho 1987). In *McCann*, the court considered an assignment with language substantially similar to that contained in the instant assignments. The *McCann* assignment provided:

[a]s part of the consideration for the indebtedness ... [Debtor] hereby *absolutely and unconditionally assigns* and transfers to [Bank] all the rents and revenues of the Property.... [Debtor] hereby authorizes [Bank] ... to collect the aforesaid rents ... and hereby directs each tenant ... to pay such rents to [Bank] ...; provided, however, that prior to written notice given by [Bank] to [Debtor] of the breach by [Debtor] of any covenant or agreement of [Debtor] in this Instrument, [Debtor] shall collect and receive all rents ... as trustee for the benefit of [Bank] and [Debtor] ... it being intended by [Debtor] that *this assignment of rents constitutes an absolute assignment and not an assignment for additional security only.*

140 B.R. at 927 (emphasis supplied). Despite the presence of absolute language, the court concluded that the assignment was "unambiguously conditional" because (1) it accorded the assignor the right to collect and receive the rents until he was notified by the assignee in writing of a default, and (2) the assignee's right to the rents would terminate after the assignor paid the obligation in full. *Id.* The *Willowood* court reached the same conclusion, holding that a transfer which ends once the debt is satisfied "appears ... to be

in the nature of a mortgage or security interest and not in the nature of a transfer of ownership interest." 114 B.R. at 142. *Accord Bethesda,* 117 B.R. at 207.

Additionally, courts have focused upon assignment provisions that allow the assignee to collect rents without being required to maintain the property. Courts have held that "this is a concept of debt collection rather than absolute ownership." *Bethesda,* 117 B.R. at 207; *see also Prichard Plaza,* 84 B.R. at 298.

In *Harvey Road,* Bankruptcy Judge Hillman was confronted with an assignment that was "nominally an absolute assignment of rents with a license-back to the mortgagor" to collect rents until default. 140 B.R. at 304. He concluded that "the assignment creates the functional equivalent of an equitable mortgage applied to rents, and that the assignee's rights are conditional and not absolute." *Id.*

A second line of cases holds that an assignment conditioned upon default can constitute an absolute assignment. *Jason Realty,* 59 F.3d at 428; *Great West Life Assurance Co. v. Rothman (Matter of Ventura–Louise Properties),* 490 F.2d 1141, 1143 (9th Cir. 1974); *Credit Lyonnais v. Getty Square Associates,* 876 F.Supp. 517 (S.D.N.Y.1995); *Federal Home Loan Mortgage Corp. v. Dutch Lane Associates,* 775 F.Supp. 133, 139 (S.D.N.Y.1991); *MacArthur Executive Associates v. State Farm Life Insurance Co.,* 190 B.R. 189, 195 (D.N.J.1995); *Geary's Bottled Liquors Co., Inc. v. Independence One Financial Services, Inc. (In re Geary's Bottled Liquors Co., Inc.),* 184 B.R. 408 (Bankr. D.Mass.1995). According to these cases, title to the rents passes to the assignee upon execution, *Jason Realty,* 59 F.3d at 427. The assignor retains a license to collect the rents until default, at which time the assignor's interest in the rents terminates. *Id.* at 425. According to the court in *Ventura–Louise,* "an absolute assignment of rents does not, of necessity, contemplate an immediate transfer of rents." 490 F.2d at 1144. In *Ventura–Louise,* the Court of Appeals for the Ninth Circuit, interpreting California law, held that it is irrelevant whether the assignment is a separate instrument or is incorporated into the mortgage. The determinative factor is whether the parties intended the assignment to constitute an absolute assignment or a pledge of additional security. 490 F.2d at 1144.

In *Jason Realty,* the Court of Appeals for the Third Circuit, applying New Jersey law, conceded that "the assignment was part of a financing transaction and served as additional security for repayment of the note," but held that this fact was not determinative. 59 F.3d at 428. The *Jason Realty* court premised its decision upon the fact that the bank collected the rents in its capacity as assignee rather than as mortgagee. *Id.* The court cautioned against confusing "assignee apples with mortgagee oranges." *Id.* at 429.

In *Geary's,* Judge Hillman considered an assignment with language similar to the instant assignments. The *Geary's* assignment provided that:

> [t]he Assignor hereby authorizes and directs the Lessees under the Lease or other occupants of the Premises, *upon receipt from the mortgagee of written notice of default* as provided in this paragraph, to pay over to the Mortgage [sic] all rents, income and profits arising from the Lease or the Premises and to continue to do so until otherwise notified by the Mortgagee....

*Id.* at 413 (emphasis added). Judge Hillman held that the provision granting the assignor a right to collect rents until default "raises an eyebrow, but it is not sufficient to deprive the assignment of its essential absolute character." *Id.*

### 2. *Analysis*

 The two assignments in the instant case provide that, prior to the Bank's notice to the Debtors of their breach of a covenant in the instrument, the Debtors would collect and receive the rents as trustees for the Bank and themselves. Each uses the term "absolute" and states that it is "not an assignment for additional security only." Additionally, the assignments provide that "Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower." Thus, the Debtors' arguments

that the assignments are conditional on their faces and that the parties intended that the rents would constitute only additional security appear to contradict the language of the assignments. As the Court noted at the hearing, the assignments incorporate strong language of an absolute nature.

Nevertheless, the Court must consider the effect of Massachusetts law governing assignments of rents. *See Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Under Massachusetts law, the Court must look beyond the plain language of the assignments and, because the Mortgage Documents were executed simultaneously, consider the transaction as a whole. *Bielanski v. Westfield Savings Bank,* 313 Mass. 577, 579–580, 48 N.E.2d 627 (1943). The assignments were incorporated into the mortgage and were given to the Bank in connection with the loan transactions. Additionally, the mortgages indicate that the riders are incorporated into them and amend the mortgage covenants. To borrow a concept from tort law, but for the loan transaction, the Debtors would not have assigned rents to the Bank. No independent consideration was given for the assignments. The fact that the assignments are conditioned upon default and will terminate upon satisfaction of the debt indicates that they are merely additional security for the loan, and not an absolute transfer of the Debtors' interest in the rents to the Bank.

The Third Circuit's well-reasoned opinion in *Jason Realty* was premised upon New Jersey law, which unequivocally provides that (1) "an absolute assignment transfers title to the assignee upon its execution," and (2) "an absolute assignment may have conditions," including being conditioned upon default. 59 F.3d at 427–8. *Accord, Ventura–Louise,* 490 F.2d at 1144 (California law).

In support of its argument that Massachusetts law, like that of New Jersey and other states, would recognize an absolute assignment of rents, the Bank cites *Winnisimmet Trust, Inc. v. Libby,* 232 Mass. 491, 122 N.E. 575 (1919). In *Winnisimmet,* the Supreme Judicial Court stated that "[r]ent ... is an incorporeal interest in land which can be assigned only by an instrument under seal.

When assigned, the assignee holds the interest in his own right and may sue for it in his own name." *Id.* at 492, 122 N.E. 575. The Court held that the assignor could not then sell the property and defeat the assignee's rights to the rents because the assignor "was not the owner of the rent." *Id.* at 493, 122 N.E. 575. However, as Judge Queenan noted in *Prichard Plaza,* the *Winnisimmet* assignee was not a mortgagee, and the assignment was not conditioned upon default. 84 B.R. at 297. Therefore, that case is distinguishable from the instant case.

The Bank also points to M.G.L. c. 183 § 26, which provides:

> Until default in the performance or observance of the condition of a mortgage of real estate, the mortgagor and his heirs and assigns may hold and enjoy the mortgaged premises and receive the rents and profits thereof, unless otherwise stated in the mortgage.

However, the issue in the instant case is the effect of an assignment provision that becomes effective *upon* default, not *"until* default."

The only decision in this district that supports the bank's position is *Geary's,* in which the court held that an assignment conditioned upon default was an absolute assignment. 184 B.R. at 413. However, the *Geary's* decision was not predicated upon any specific Massachusetts cases or other authorities. Furthermore, the holdings in *Geary's* and *McCann* appear to be contradictory and cannot be reconciled. Although *McCann* was decided under Ohio law, the Court held that the principles of *McCann* apply generally. *Id.* This Court respectfully disagrees with the holding in *Geary's.* The Court is persuaded by, and will follow, the rule in *McCann.* Accordingly, the Court finds that the assignments of rents were not absolute but rather constituted additional security for the debt. *See generally* Carlson, *Rents in Bankruptcy,* 46 S.C.L.Rev. 1075 (1995).

■ Since the rents constitute "property of the estate" pursuant to section 541(a)(6), and the bank has a security interest in them, the rents constitute cash collateral. *See* 11

U.S.C. § 363(a).[11] *See also Prudential Insurance Co. of America v. Boston Harbor Marina Co.*, 159 B.R. 616, 618 (D.Mass.1993) ("a perfected security interest in rents, even if unenforced prior to the date of the bankruptcy petition, constitutes cash collateral").

The Bankruptcy Reform Act of 1994 added to the Bankruptcy Code section 552(b)(2), which provides that a mortgagee holding a valid prepetition assignment of rents may treat postpetition rents as cash collateral entitled to adequate protection.[12] The legislative history of section 552(b)(2) indicates that it was intended to obviate the type of dispute typified by several Massachusetts decisions.[13] *See Matter of Newberry Square, Inc.*, 175 B.R. 910, 915 (Bankr. E.D.Mich.1994).

The next issue to be determined is whether the Debtors can provide the Bank with adequate protection for its security interest in the rents in order to obtain turnover. *See Whiting Pools*, 462 U.S. at 211–12, 103 S.Ct. at 2316–17. The Court has considered the Debtors' plan and the arguments of both the Debtors and the Bank. The Court is persuaded by the bank's arguments with respect to feasibility. Additionally, since gifts are not legally enforceable, they cannot be considered a source of payment for the plan. Therefore, the Court hereby orders the Debtors to file an Amended Chapter 13 plan addressing the Bank's contentions in accordance with the accompanying Order. Upon the filing of an Amended Plan, the Court shall schedule a hearing on the issue of adequate protection for the use of cash collateral and the Complaint for Turnover.

## V. CONCLUSION

For the foregoing reasons, the Court rules that the rents are property of the Debtors' estate and constitute cash collateral. The Court denies the bank's Motion for Summary Judgment and continues the Debtors' Motion to Use Cash Collateral until an amended Chapter 13 plan is filed.

---

**11.** Section 363(a) defines "cash collateral" as follows:

> cash ... or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the ... rents ... of property ... subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

**12.** Section 552(b)(2) in turn provides the following:

> Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, and notwithstanding section 546(b) of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to amounts paid as rents of such property ... then such security interest extends to such rents ... acquired by the estate after the commencement of the case to the extent provided in such security agreement, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(2).

**13.** Under Massachusetts law, a mortgagee bank's right to collect rent is conditioned upon its possession of the properties. *See In re Prichard Plaza Associates Limited Partnership*, 84 B.R. 289, 297 (Bankr.D.Mass.1988); *In re Genestri*, 12 F.2d 456, 457 (D.Mass.1926); *Elmore v. Symonds*, 183 Mass. 321, 323, 67 N.E. 314 (1903) ("if the note and mortgage are considered only as collateral security for the performance of the contract," then the assignee must enter or take possession of the property "either for the purpose of foreclosure or to collect the rents"); *Ewer v. Hobbs*, 46 Mass. (5 Met.) 1, 3 (1842).

The bankruptcy courts in this district have disagreed on the degree of entry and possession required of the mortgagee. *See Prichard Plaza*, 84 B.R. 289 (actual possession of the property is required); *In re Milford Common J.V. Trust*, 117 B.R. 15 (Bankr.D.Mass.1990) (an overt act such as recording of entry is sufficient); *In re Ashford Apartments Ltd. Partnership*, 132 B.R. 217 (Bankr.D.Mass.1991) (entry plus notice to tenants is sufficient); *In re Concord Mill Limited Partnership*, 136 B.R. 896 (Bankr.D.Mass.1992) (notice to tenants plus entry or attempted entry, if thwarted by the debtor, is sufficient); *In re Cantonwood Associates Ltd. Partnership*, 138 B.R. 648 (1992) (filing a certificate of entry, giving notice to tenants and initiating a lawsuit to obtain possession are sufficient). In light of the 1994 amendment to section 552(b)(2), the issue is now moot.